No. 32,162

THE STATE OF KANSAS, *Appellee*, v. GORDON "BABE" STRODE, *Appellant*.

(42 P. 2d 603)

Opinion filed April 6, 1935.

*Elisha Scott*, of Topeka, for the appellant.

*Clarence V. Beck*, attorney-general, and *Richard B. Stevens*, county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a prosecution under R. S. 65-615. The defendant was arrested and prosecuted for the unlawful possession of narcotics. He was convicted, and having been previously convicted of a felony the penalty was increased.

His defense was that he obtained a prescription from a doctor who said he had been practicing medicine for twenty years. He applied to Doctor Ransom for a remedy for arthritis. With a prescription given him he obtained twenty tablets. The doctor testified that defendant had contracted a cold, had a high fever and suffered considerable pain, and that as a result of his ailments he prescribed morphine sulphate of one-half grain tablets and sodium salicylate, five-grain tablets, to relieve his condition. The prescription was filled by a druggist, and directions for the use of it were on the bottle. The prescription for twenty tablets was filled at the drug store at one o'clock p. m., and he was arrested in Lawrence the next night at one o'clock a. m., and had consumed or disposed of twelve tablets in about eight hours. When he was arrested his condition showed that he was emaciated. Defendant's behavior beginning Sunday after he was placed in custody was that he became wild, tore around like a raving maniac, complaining of various ills and refusing to eat or drink, and that he did this for a considerable time afterwards. A doctor was called, who gave the defendant some medicine.

Doctor Anderson was called as a witness by the state and testified that he had made a study of arthritis and that he had also some experience with narcotic addicts, and that he was present when Doctor Jones had a conversation with the defendant which was, in substance, that the defendant stated to Doctor Jones that since his custody he had gained four or five pounds in weight, and that defendant had no further pains. Doctor Anderson and Doctor Jones agreed after examining the knee joints of defendant that there were no visible signs of arthritis. That arthritis in its first stages is accompanied by swelling of the joints and that pain follows two or three days later. That the actions of the defendant while in jail, as described by Sheriff Dunkley, were a picture of a drug addict. Doctor Jones asked the defendant about the previous use of narcotics, and he said he had had several previous attacks of arthritis—

one in Portsmouth—and that a doctor prescribed ten grains [doses] of morphine of one grain each, and that he had had similar attacks in Denver and Sharon Springs. That for the shooting pains in his legs the defendant stated he has also taken shots of neo-salvarsan, of bismuth, and also of mercury.

L. L. Bouton, the analyst of the state food laboratory, was called as a witness and testified that if a human being consumed twelve of these tablets between the hour of one p. m. and one a. m. the following day, they would have the following effect: The average dose of morphine is one-eighth of a grain. If a person takes one-ninth [one-half] grain, or it is given as a hypodermic, it will put an individual completely out—make him entirely unconscious. Twelve of those tablets make six grains—forty-eight average doses. It would be absolutely impossible for a normal person who is not addicted to dope to consume that much in that space of time.

The evidence tended to show the possession of narcotics by the defendant was unlawful. It is evident that the possession was not in good faith. If the possession was gained by the prescription of a doctor, as the statute provides, it was lawful; but if those methods were a subterfuge, and there is proof of an intent to violate the statute, the defendant is guilty of being in the unlawful possession of narcotics. In *State v. Miller*, 127 Kan. 487, 274 Pac. 245, it was held that possession or control shall be presumptive evidence of a violation. The court said:

"And further, when the state has established a *prima facie* case against a defendant charged with possession of narcotics, the defendant is under the necessity of combating this *prima facie* case by reasonable and credible explanation of his possession of the property, consistent with his innocence, and his failure to make such explanation subjects him to the risk of conviction." (Syl. ¶ 2.)

The fact that the defendant procured narcotics from the doctor in a lawful manner does not exempt him from the force of the statute if he misrepresents his condition to the doctor. The quantity of narcotics procured and the use of the same tends to show an unlawful use of the same whether he used or sold some of them to others. The doctor stated that he did not know of his possession of a hypodermic needle and cup, and that he gave a prescription with the idea that he would take it through the mouth. Addicts who use the needle get quicker and more stimulating results. His appearance and conduct after his arrest were described. If he had taken

all of the twelve doses as directed he would have been unconscious, but he was able to walk about and peddle the prescription. The defendant was not as sick as he pretended to be. He represented that he was writhing in pain in the afternoon of the fourteenth day of March, and by the following midnight he was on his way to Lawrence carrying part of his prescription of narcotics.

The proof was sufficient to show that the possession of narcotics was unlawful, and it was incumbent on defendant to make it appear by reasonable and credible explanation of his possession that it was procured in good faith. It was shown it was purchased by methods recognized by the statute, but if it was a subterfuge—as to his condition—he is outside the law; and if the physician shall prescribe narcotics to one who does not need medical attention and falsely obtains possession of narcotics he steps outside the exemptive provisions of the law. (*State v. Miller*, supra.) Defendant failed to make a reasonable explanation of his possession of the narcotics and must be deemed guilty of unlawful possession. The evidence examined is held to be sufficient to show that he was guilty of unlawful possession of the narcotics.

The question was raised as to what penalty should be imposed. It was shown that defendant had been previously convicted of a felony on two previous trials and therefore the court increased his penalty and adjudged that he be confined in the state penitentiary at hard labor the balance of his natural life, and pay a fine of $500 and costs of the trial. This was in accordance with the law, and objections to the rulings on the evidence and in the instructions to the jury are not deemed to be material or contrary to law.

The judgment is affirmed.