STATE OF CONNECTICUT *v.* ARTHUR N. BELANGER

STATE OF CONNECTICUT *v.* LEO F. McCANN

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued November 2, 1960—decided January 5, 1961

*Robert I. Berdon,* with whom was *Frank S. Shea,* for the appellants (defendants).

*Allyn L. Brown, Jr.,* state's attorney, for the appellee (state).

MELLITZ, J.  On February 11, 1958, the defendants were arraigned on an information charging them with illegal possession of narcotic drugs.  Prior to their arraignment, the state's attorney had information in his files of prior convictions which would justify charging the defendants as second offenders of the narcotics laws.  Immediately before their arraignment, the state's attorney called each defendant separately into a jury room with his attorney and informed each defendant that he was to be charged as a second offender upon conviction of the offense as to which he was about to be put to plea.  The defendants pleaded not guilty, were tried by the court, and were convicted on March 13, 1958.  They were then presented on a second part of the information, dated March 13, 1958, charging them as second offenders of the narcotics laws.  Each interposed a demurrer to the second part of the information on March 18, 1958.  The demurrers were overruled, each defendant entered a plea of guilty to the matters charged in the second part of the information, and each was sentenced to be imprisoned in the state prison for a term of not less than ten nor more

than twelve years. On March 20, 1959, more than a year later, the defendants filed motions in arrest of judgment. From a denial of the motions, and from the judgments finding the defendants guilty, they have appealed.

The court did not err in denying the motions in arrest. Whether such a motion could properly be filed at all, in a case tried to the court, we need not decide. See *Mix* v. *Page,* 14 Conn. 329, 334. Where a motion in arrest lies, it must be filed within twenty-four hours, although the court may, for good cause, extend the time. Practice Book § 233; *Uncas Paper Co.* v. *Corbin,* 75 Conn. 675, 678, 55 A. 165. Both the term and the session of court during which the judgments were rendered had expired long before the time the motions were filed. Nov. 1955 Sup., § N227 (General Statutes § 51-180). The court was without power, over objection by the state, either to extend the time for filing or to grant the motions.

Error is assigned in a number of rulings on evidence but only two are pursued. Testimony was admitted relating to the conduct of Belanger just prior to his arrest and the conduct of both defendants after their arrest. The ground of objection in each instance was that the testimony was irrelevant and immaterial. The testimony concerning Belanger's conduct before his arrest tended to corroborate other testimony concerning his appearance and actions immediately before, when, as the state claimed, he disposed of a vial containing narcotics. The testimony concerning the conduct of both defendants after their arrest tended to establish that they were confirmed narcotics addicts. There was no error in these rulings. The evidence had a bearing on the probability or likelihood of the existence of the facts the trier was ultimately required to determine. One fact

is relevant to another whenever the existence of the one, taken alone or in connection with other facts, renders the existence of the other more certain or more probable. *Pope Foundation, Inc.* v. *New York, N.H. & H.R. Co.,* 106 Conn. 423, 435, 138 A. 444.

The court concluded that both defendants were in illegal possession of narcotic drugs on December 11, 1957, in violation of § 3962 of the 1949 Revision (as amended, General Statutes § 19-246); that Belanger had in his possession methadone, a synthetic narcotic drug similar to morphine, and McCann had in his possession morphine sulfate; and that McCann did not sustain the burden of proving legal possession of the drug, as required by what is now General Statutes § 19-262. The brief of the defendants does not question the propriety of the conviction of Belanger on the charge of illegal possession as contained in the first part of the information. His appeal in this aspect is therefore regarded as abandoned. Maltbie, Conn. App. Proc. § 327. On behalf of McCann, it is earnestly argued that the court erred in concluding that the evidence was sufficient to establish his guilt beyond a reasonable doubt.

The finding is not subject to correction in any material respect and sets forth the following facts: On December 11, 1957, McCann, who resided in Worcester, Massachusetts, went to Hartford, Connecticut, and met Belanger on the streets of Hartford at approximately 9 a.m. McCann had known Belanger for fifteen to twenty years. McCann had been a narcotics addict for many years, and had obtained narcotics from physicians in Vermont and New Hampshire. Belanger had twice before obtained a prescription for narcotic drugs from Dr. Elijah Burdsall, a licensed physician practicing in New London, who was authorized by the state of Connecticut to

dispense and prescribe narcotics. Belanger invited McCann to accompany him to New London, and they traveled there in an automobile owned by Belanger. Upon arrival, McCann obtained an appointment with Dr. Burdsall. McCann had not previously been a patient of his. McCann did not reveal to Dr. Burdsall that he was addicted to the use of narcotic drugs. Upon McCann's suggestion that a narcotic be prescribed to relieve severe neuralgic pain in his face, Dr. Burdsall gave him a prescription for twenty-four half-grain tablets of morphine sulfate, instructing him to take the prescribed narcotic by mouth. McCann went to a pharmacy licensed to dispense narcotics and had the prescription filled. He then stopped at a restaurant and went into the men's room, where he prepared one or more of the morphine sulfate tablets to be injected into his body. He had on his person a bottle for use in cooking up narcotics and a hypodermic needle for use in injecting them. After preparing the drug, McCann injected the solution into his body. He returned to Belanger's automobile, having what remained of the morphine pills prescribed by Dr. Burdsall on his person. He and Belanger drove to Crocker Farms, a public restaurant. There Belanger attempted to dispose of a vial which had in it three pills containing methadone. When McCann got out of Belanger's car at Crocker Farms, he had a bottle of narcotics with him. At the time of his arrest, he had three empty vials on his person, two of which contained traces of narcotics. The police found fourteen tablets containing morphine on the seat and floor of Belanger's automobile. McCann did not have the prescription label for the narcotics he obtained as a result of Dr. Burdsall's prescription, and he could not identify or produce the con-

tainer in which the narcotics had been delivered.

Section 3962 of the 1949 Revision was a part of the Uniform State Narcotic Drug Act and made it an offense for a person to possess or have under his control any narcotic drug except as authorized by that act. Section 19-262 of the General Statutes provides that, in any proceeding brought for the enforcement of any provision of the act, it shall not be necessary to negative any exception or exemption contained in the act, and the burden of proof of any such exception or exemption shall be upon the defendant. McCann contends that the proof of the state was that he had possession of morphine, the drug prescribed for him by Dr. Burdsall, and that his possession of the drug on the day in question was legal. What is now § 19-254 relates to the authorized possession of narcotic drugs by individuals and provides that a person to whom or for whose use any narcotic drug has been prescribed by a physician may "lawfully possess it only in the container in which it was delivered to him" by the person selling or dispensing it. Testimony presented by McCann established that the prescription given him by Dr. Burdsall was filled by a registered pharmacist, who gave McCann twenty-four half-grain tablets of morphine sulfate. The state claimed that McCann was in possession of the fourteen tablets containing morphine which were found on the seat and floor of Belanger's car. This claim McCann did not dispute. His defense was that his possession of the tablets was legal because they were prescribed for him by a physician. To establish this defense, however, it was not sufficient to show merely that the drug was obtained through a prescription from a physician. McCann was required to show compliance with §§ 19-254 and 19-262. These imposed

upon him the burden of proving that he had the drug in the container in which it was delivered to him. The finding is that he could not produce the container in which the narcotic had been delivered to him. In the absence of proof that the drug in his possession was in the container in which it was delivered to him, his possession was unlawful. Moreover, a further conclusion of the trial court, a conclusion supported by the subordinate facts found, is that McCann did not legally obtain possession of the morphine sulfate. When he obtained the prescription for the drug, he did not reveal to Dr. Burdsall, but concealed the fact, that he was a drug addict. Section 3977 of the 1949 Revision (as amended, General Statutes § 19-261) makes it illegal to obtain a narcotic drug by the concealment of a material fact. As McCann obtained the drug in an unlawful manner, his possession of it was illegal, despite the fact that it was procured by the prescription of a physician. *State* v. *Strode,* 141 Kan. 721, 723, 42 P.2d 603. No basis has been presented for disturbing the court's conclusion that McCann was guilty of the offense charged.

The defendants contend further that the court erred in interpreting § 2103d of the 1955 Cumulative Supplement (as amended, General Statutes § 19-265) as requiring a mandatory minimum sentence of ten years for a second offense. The pertinent portion of the statute reads as follows: "Any person who violates any provision of this chapter, . . . for a second offense, shall be fined not less than two thousand dollars nor more than five thousand dollars and imprisoned in the State Prison not less than ten nor more than fifteen years, or be both fined and imprisoned . . . ." The claim of the defendants is that the legislature intended the minimum penalty to be

either a fine or imprisonment, otherwise there would be no purpose to the clause "or be both fined and imprisoned." Whether the statute, properly interpreted, makes mandatory the imposition of both a fine and imprisonment need not be here determined. The defendants are not in a position to complain, since the penalty imposed upon them was imprisonment alone. It is obvious that the statute requires clarification so that any ambiguity may be removed; but it is clear that where, as here, the court feels a term of imprisonment to be necessary, the minimum period of imprisonment which may be prescribed for a second offender is ten years. In its sentencing remarks, the court took note of the severity of the penalty but expressed its opinion that confinement was required for the defendants, in their own interest, so that they could receive the treatment which would be likely to be an incident of their confinement.

It may be noted that at the time of the commission by the defendants of the offenses of which they were convicted, there was, under § 3962, no offense, other than illegal possession, with the attendant severe penalties upon conviction, for which narcotics addicts like them could be prosecuted; nor did the statute make any distinction between narcotics users and narcotics traffickers in the penalties which were mandatory upon conviction. Since then, by the provisions of Public Acts 1959, No. 485 (General Statutes §§ 19-246, 19-265, 19-265a), addiction to narcotics has itself been made a crime, and the penalty which may be imposed for self-administration of, or addiction to, narcotic drugs may be imprisonment for not more than five years, or probation, or commitment to a state mental hospital or other institution for treatment. The legislature has thus mani-

fested an intention of differentiating between narcotics addicts and narcotics traffickers, making it now possible to impose on addicts sentences which look to treatment and rehabilitation. Under the present statute, conviction of an addict may be obtained independently of a charge of illegal possession under § 19-246, the successor to § 3962, so that the severe penalties which are mandatory upon conviction of illegal possession (§ 19-265) are no longer the only penalties which a court may impose upon persons in the class of the defendants here. The court committed no error in the imposition of the sentences.

There is no error in either case.

In this opinion the other judges concurred.