LORING J. WHITESIDE *v.* STATE OF CONNECTICUT

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 8, 1960—decided January 24, 1961

*Loring J. Whiteside,* pro se, the plaintiff in error.

*Vincent Villano,* for the defendant in error.

KING, J.   The plaintiff in error, hereinafter referred to as the accused, was tried in the Municipal Court of the city of New Haven under an information in twenty-six counts charging him with the offense of criminal libel in violation of what is now § 53-174 of the General Statutes. At the close of the trial, the accused was adjudged guilty on twenty-four counts. Immediately thereafter, and before the imposition of sentence, the court found the accused guilty of contempt of court and for that imposed a fine of $100.

Where a contempt occurs in the presence of the court, no witnesses are required in proof of the contempt, and the court has inherent power to impose punishment on its own knowledge and of its own motion, without formal presentation or hearing of the person adjudged in contempt. *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166; *McCarthy* v. *Hugo,* 82 Conn. 262, 266, 73 A. 778. Section 51-33 of the General Statutes provides that in such a case no court shall inflict a greater fine than $100 or a longer term of imprisonment than six months. The

sole method of review is by writ of error. *Goodhart* v. *State,* 84 Conn. 60, 63, 78 A. 853. The real claim of the accused is that the contempt did not occur in the presence of the court and that consequently the court was without jurisdiction to make a summary adjudication of contempt. See *Goodhart* v. *State,* supra. The writ of error which the accused brought to obtain a review of the adjudication of contempt contains (1) exhibit A, which is a bill of exceptions incorporating by reference exhibits B and C; (2) exhibit B, which is a copy of a demurrer and a request or motion that the judge disqualify himself, and which was filed and argued by the accused during the course of the trial; and (3) exhibit C, which is a transcript of so much of the proceedings on the criminal trial as relates to the contempt.

On the morning of the third day of the criminal trial, immediately prior to the opening of court, the accused filed with the clerk a so-called demurrer, which alleged that "none of the counts against [the accused] . . . constitute a crime under" what is now § 53-174 of the General Statutes. To this demurrer the accused attached a clipping of an article which had just appeared in an issue of "the grapevine press," a weekly pamphlet published by him. The article, which was over his name, purported to request the presiding judge to disqualify himself from further participation in the criminal trial for certain stated reasons, many of which were so clearly insulting and contemptuous, as well as wholly improper in connection with any motion for disqualification, that we refrain from reciting them. Thereafter, upon the opening of court, the accused was informed by the court that it had been furnished with what purported to be a demurrer filed that morning with the clerk. The accused was given an opportu-

nity to be heard thereon. At the close of his remarks on the demurrer, he asked the court if it wanted him to speak about his request that the judge disqualify himself, and the court replied that it was not asking him to make any comment but would give him an opportunity to be heard on the pleading which he had filed. Thereupon the accused stated that the bulk of his comment on the request that the judge immediately disqualify himself from sitting further in the case was "pretty well covered in the printed portion of this motion."

The accused claims that the motion was not a contempt committed in the presence of the court—and therefore he was not subject to summary punishment—because the motion was filed in the clerk's office prior to the opening of court. See cases such as *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166. We are not called upon to decide this claim; see 17 C.J.S. 39; because the accused took it upon himself in open court to refer the court to "the printed portion of this motion" in lieu of an oral argument. This amounted to a repetition, in open court, of the statements in the motion. It was as much a contempt as though the statements had orally been repeated verbatim in the courtroom. The only possible difference in effect would be, not on the court itself, but on any persons in the courtroom who were not acquainted with the language of the motion. The claim of the accused seems to be that only contemptuous statements audibly addressed to the court, as distinguished from such statements in a writing submitted to the court, can constitute a contempt in the presence of the court. The mere statement of such a proposition is sufficient to refute it.

The article in "the grapevine press" purported to

be, and was obviously claimed by the accused to be, an instrument amounting to a motion or request that the judge, for the reasons stated therein, disqualify himself. The motion and supporting reasons constituted one pleading, which in its entirety was deliberately phrased in an insulting and contemptuous manner. The procedure pursued was wholly unnecessary in order to raise any proper claim of disqualification. Statements made in a motion for disqualification, if they are pertinent and germane to the motion, are phrased in a proper and respectful manner and are honestly and reasonably believed to be true by the draftsman, are not a contempt of court, even though they may necessarily, in certain situations, reflect adversely upon the conduct or character of the judge. Many of the statements contained in the present motion were neither pertinent nor germane to the issue of disqualification. They were deliberately phrased in a grossly improper and disrespectful manner. Nor could they reasonably have been believed by the accused to be true. See cases such as *Huggins* v. *Field,* 196 Ky. 501, 505, 244 S.W. 903; note, 29 A.L.R. 1273. As stated in *Huggins* v. *Field,* supra, 507, "[s]uch a tirade of abuse is far removed from a good faith statement of facts to show bias or prejudice [or other proper ground for disqualification]."

The accused points out that the court, in finding him guilty of contempt, stated that he had been contemptuous in "filing" the issue of "the grapevine press" and had been "most contemptuous in [his] . . . pleading here this morning." The accused claims that this statement eliminated, as a ground for the adjudication of contempt, any argument of the motion and restricted the ground to the mere act of filing the motion. He then claims that since this

filing occurred prior to the opening of court it did not take place in the presence of the court. This claim is more ingenious than persuasive.

The whole course of action of the accused was improper in the extreme, including his publication of an article in "the grapevine press" in the form of a motion or request for disqualification and his subsequent filing of a printed clipping of that article as such a motion. All this created such a state of confusion that the accused is not entitled to take advantage of any hypertechnical dissection of the apparently extemporaneous remarks of the court, after this most outrageous attack upon it, in adjudicating the accused in contempt. See cases such as *Buden* v. *Dombrouskas,* 147 Conn. 728, 730, 166 A.2d 157. The contempt here occurred in the presence of the court, and it was proper for the court to impose punishment on its own motion and of its own knowledge, without formal presentation of the accused on any charge. *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166.

Another claim of the accused, which is apparently based on some theory of waiver, was that the court had divested itself of any right to punish him for contempt because at the opening of court, after the court heard the accused on the demurrer and the motion for disqualification, it said: "I will not, Mr. Whiteside, again permit contemptuous pleadings to be filed. I am not going to hold you in contempt . . . sir, but the manner in which you filed this pleading, and the language contained therein in the opinion of the Court is contemptuous." The court had a right subsequently to change its mind during the course of the trial. The accused does not claim, nor does the record indicate, that he did, or refrained from doing, anything in reliance on the court's statement

that although he had committed a contempt he would
not be adjudged in contempt. Punishment for con-
tempt in the presence of the court is summary, and
subject only to the limited review outlined in *Good-
hart* v. *State,* 84 Conn. 60, 63, 78 A. 853, and *State* v.
*Jackson,* 147 Conn. 167, 169, 158 A.2d 166. Because
of the necessarily drastic character of the procedure,
it is often a wise practice, where the circumstances
do not compel immediate action, for a court to defer
making the adjudication until it has had some op-
portunity for consideration and reflection. The
course pursued here in effect conformed to that
practice. Even if the warning given the accused by
the court could be distorted into an adjudication that
he would not be found in contempt, that adjudica-
tion remained subject to change during the course
of the trial. *Cichy* v. *Kostyk,* 143 Conn. 688, 696,
125 A.2d 483; see *State* v. *Maresca,* 85 Conn. 509,
83 A. 635; *State* v. *Belanger,* 148 Conn. 57, 59, 167
A.2d 245. The theory of waiver has no application
to the right and power of a court to change its judg-
ment in a situation such as this.

The court corrected the stenographic transcript
appended to the writ of error by the insertion, in the
quotation of its remarks as set forth above, of the
words "at this time" after the words "I am not go-
ing to hold you in contempt." The court was not
only entitled, but it was its duty, to correct the tran-
script incorporated in the bill of exceptions, in order
to make the transcript conform to the fact. *Papallo*
v. *Meriden Savings Bank,* 128 Conn. 289, 291, 22
A.2d 637. The accused took no proper steps to have
the claimed erroneous addition deleted. Ibid. How-
ever, for the reasons already outlined, the result
here would be unchanged even if the court had made
no correction in the transcript. Parenthetically, it

should be noted that some errors are likely to occur in a transcript of length, even with the most accurate and efficient of reporters. See *State* v. *Gerich,* 136 Conn. 705, 708, 73 A.2d 821.

There is no error.

In this opinion the other judges concurred.