In September, 1978, while on trial in the Superior Court on criminal charges, the defendant was adjudged to be in contempt of court. The court rendered the contempt judgment on its Own motion and ordered the defendant committed to the custody of the commissioner of corrections for a period of two months. The court determined that after the jury had been selected, but before the jury members were sworn in, the defendant had deliberately mailed or caused to be mailed to members of the jury and members of the jury panel a packet of written materials. These written materials improperly commented on matters previously excluded and otherwise ruled upon by the court during the jury voir dire. The finding of contempt was based on this conduct, which the court concluded had occurred in its constructive presence, and also on certain responses made by the defendant in court. The court rendered the contempt judgment summarily, pursuant to General Statutes 51-33 and the common law, and then declared a mistrial. The underlying criminal action later proceeded to a trial on the merits before a different judge. The defendant has taken this appeal solely from the *Page 548 
contempt judgment, and has specifically reserved his right to file a separate appeal from the judgment rendered on the merits of the underlying action.
This motion to dismiss was filed by the state pursuant to Practice Book, 1978, 3110 for lack of jurisdiction. The basis of the state's argument is that the judgment being appealed from here is an adjudication of criminal contempt which can only be reviewed by writ of error.
Civil contempt is conduct that is directed against the rights of the opposing party, while criminal contempt is conduct that is directed against the dignity and authority of the court. McTigue v. New London Education Assn., 164 Conn. 348,352, 321 A.2d 462 (1973). One basic distinction between civil and criminal contempt proceedings is the character and purpose of the punishment. "When the punishment is purely punitive, imprisonment for a definite term or a fine for a certain sum of money, the contempt is said to be criminal. When the punishment is a remedial or coercive measure, commitment of a contumacious party until he complies with the mandate of the court or a fine until there is obedience to the court's order, the contempt is said to be civil." Board of Education v. Shelton Education Assn., 173 Conn. 81, 86, 376 A.2d 1080
(1977); McTigue v. New London Education Assn., supra.
The judgment rendered in the present case was clearly one of criminal contempt. The court specifically concluded that the conduct of the defendant was "purposely, wilfully and deliberately directed against the dignity and authority of the court." The sentence imposed was for a definite term and was purely punitive. The defendant was not given the opportunity to purge himself of contempt by complying with any court order. *Page 549 
A contempt judgment is a reviewable final action. Where the contemptuous conduct occurs outside of the presence of the court, and the court acts on the motion of one of the parties, the contempt judgment is reviewable by appeal; Leslie v. Leslie, 174 Conn. 399, 402, 389 A.2d 747
(1978); Stoner v. Stoner, 163 Conn. 345, 359,307 A.2d 146 (1972); and this is true even if the contempt sanctions imposed are criminal in nature. Board of Education v. Shelton Education Assn., supra; McTigue v. New London Education Assn., supra. Review of adjudications of criminal contempt, however, has been On a more restricted procedural basis when the contemptuous conduct occurred in the presence of the court and a summary adjudication of contempt was made. In Whiteside v. State, 148 Conn. 77, 78-79,167 A.2d 450 (1961), the Supreme Court stated that in such instances "[t] he sole method of review is by writ of error." See Goodhart v. State, 84 Conn. 60, 63,78 A. 853 (1911); Tyler v. Hammersley, 44 Conn. 393
(1877).
The summary punishment of persons who behave contemptuously or disorderly in the presence of the court is specifically authorized by General Statutes 51-33. This power has been recognized as essential to the administration of justice. "Without the power, a court would be helpless against persons disposed to obstruct, delay or thwart it." State v. Jackson, 147 Conn. 167, 169,158 A.2d 166 (1960); Goodhart v. State, supra. A court exercises considerable discretion in dealing with contemptuous conduct occurring in its presence, and its summary adjudication is accorded a presumption of finality. "An adjudication of contempt is final and may be reviewed only on questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a *Page 550 
contempt." State v. Jackson, supra, 170; Goodhart v. State, supra. "From necessity the court must be its own judge of contempts committed within its presence. In such a case it may act of its own motion without any charge, formal or otherwise, being presented, without evidence, and solely upon facts within its own knowledge. If it has jurisdiction, there can be no review of its action." Goodhart v. State, supra, 63; State v. Jackson, supra, 170.
The trial judge in the present case concluded in his finding that the defendant had been summarily found in contempt for his conduct in the actual presence and in the constructive presence of the court. Obviously, the court had the authority under 51-33 summarily to find the defendant in contempt for statements actually made by the defendant in court. The defendant contends, however, that the court had no power to find him in contempt summarily for his out-of-court conduct in causing t, he packets of information to reach members of the jury panel. While there appears to be some precedent to support a summary adjudication of contempt for conduct outside of the actual presence of the court; Huntington v. McMahon, 48 Conn. 174 (1880); we need not determine that issue. Since the trial court treated the conduct as occurring in its presence and made a summary adjudication of contempt on that basis, the sole method to review this determination is a writ of error. Whiteside v. State, supra, 79; Goodhart v. State, supra. Under the limited scope of review allowed in such instances; State v. Jackson, supra; Goodhart v. State, supra; the defendant could properly challenge the jurisdiction of the court to find him in contempt summarily for conduct which he claims was not in its presence. This was precisely the issue litigated in Whiteside v. State, supra. Until such time, however, as a challenge *Page 551 
to the court's summary adjudication is properly made by writ of error, a presumption of finality must be accorded to the trial judge's exercise of discretion in response to contemptuous behavior in his presence.
The Supreme Court would have jurisdiction over such a writ of error. State v. Assuntino,173 Conn. 104, 111, 376 A.2d 1091 (1977). The scope of review on a writ of error is, however, narrower than would be a review on appeal, reaching only those matters appearing as of record. State v. Assuntino, 180 Conn. 345, 347, 429 A.2d 900
(1980). Because the only way to review a summary adjudication of contempt found to have been committed in the presence of the court is by writ of error to the Supreme Court, we must dismiss this appeal.
 The state's motion to dismiss is granted.
A. ARMENTANO, D. SHEA and BIELUCH, Js., participated in this decision.