THEODORE JACKSON *v*. JOHN BAILEY,
STATE'S ATTORNEY
(14253)

PETERS, C. J., GLASS, COVELLO, BORDEN and SANTANIELLO, Js.

Argued January 14—decision released March 31, 1992

*Martin Zeldis,* assistant public defender, for the plain-tiff in error.

*Harry Weller,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *James Thomas,* senior assistant state's attorney, for the defendant in error.

SANTANIELLO, J. The plaintiff in error, Theodore Jackson (plaintiff), brought a writ of error to this court seeking reversal of a judgment of the Superior Court, summarily finding that he had committed three separate contempts of court and sentencing him to fifteen months imprisonment. The plaintiff argues that the trial court erred when it summarily sentenced him to fifteen months in prison without: (1) affording him a jury trial; (2) giving him notice or allowing him a full opportunity to respond to the charges against him; and (3) having such contempt charges heard and decided by a different judge.

" 'The present case, which involves a review of a summary criminal contempt proceeding, comes before us on a writ of error which is the sole method of review of such proceedings. *Whiteside* v. *State,* 148 Conn. 77, 78–79, 167 A.2d 450 (1961); *Goodhart* v. *State,* 84 Conn. 60, 63, 78 A. 853 (1911). The scope of our review reaches only those matters appearing as of record. *State* v. *Assuntino,* 180 Conn. 345, 347, 429 A.2d 900 (1980); *Reilly* v. *State,* 119 Conn. 217, 223, 175 A. 582 (1934). In a review of summary criminal contempt, the inquiry is limited to a determination of the jurisdiction of the court below. *Tyler* v. *Hammersley,* 44 Conn. 393, 413 (1877). Subsumed in this inquiry are three questions, namely, (1) whether the designated conduct is legally susceptible of constituting a contempt; *Goodhart* v. *State,* supra; (2) whether the punishment imposed was authorized by law; *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166 (1960); and (3) whether the judicial authority was qualified to conduct the hearing. *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 465–66, 91 S. Ct. 499, 27

L. Ed. 2d 532 (1971).' *Moore* v. *State*, 186 Conn. 256, 257, 440 A.2d 969 (1982)." *In re Dodson*, 214 Conn. 344, 346–47, 572 A.2d 328, cert. denied,    U.S.   , 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990).

The record discloses, inter alia, the following: On August 27, 1990, the plaintiff was arrested and charged with three serious crimes for which bond was set at $300,000. On December 26, 1990, bond was reduced to $85,000. On February 25, 1991, the plaintiff filed a motion for a further bond reduction. On March 6, 1991, the plaintiff appeared in court to be heard on this motion.

After listening to argument by counsel, the trial court denied the motion. As the plaintiff was exiting the courtroom, an apparent disturbance prompted the trial court to order that the plaintiff be returned to the courtroom.[1] After the plaintiff was returned to the courtroom, the plaintiff explained that his reaction was due to the fact that he was being held in Bridgeport, which was far from his friends and family in Hartford, and his concern over pretrial delay. An angry exchange followed in which the plaintiff uttered various obscenities to the trial court, and the court, in response, summarily found that the plaintiff had committed three separate contempts, for which the trial court sentenced the plaintiff to a total of fifteen months imprisonment.[2]

---

[1] The court later stated that the reason it ordered the plaintiff back into the courtroom was because "[the plaintiff] went through that door, banged the door open, and was going out mumbling and talking in a loud voice. And I had him brought back, because this is a courtroom, it's not a barroom . . . ."

[2] The three contempts resulted from the following exchange:

"The Court: Well—OK. Just remember, you're in a courtroom, Sir.

"The Defendant: I wouldn't give a fuck about your courtroom. I would just like to—

"The Court: OK. Mr. Jackson—bring him back. For that statement, I'm finding you in contempt of Court, for saying an obscenity in this courtroom. Do you understand that?

On March 7, 1991, the plaintiff filed a motion to correct illegal findings of contempt. This motion was argued before the trial court on March 14, 1991. Before ruling on the plaintiff's motion, the trial court articulated the reasons for its three findings of contempt, describing the effect that the plaintiff's conduct could have on the dignity of the courtroom, had such contempt findings not been made.[3] The trial court then denied the motion. Subsequently, the plaintiff filed this writ of error challenging the trial court's findings of contempt.

## I

The first issue raised in the writ is whether the trial court was authorized, under its summary contempt powers, to impose an aggregate sentence of greater

"The Defendant: So what? So what?

"The Court: Do you have any reason why I should not find you in contempt? OK.

"The Defendant: Why shouldn't you?

"The Court: OK. Ninety days for contempt.

"The Defendant: Suck my dick for giving me another 90 days.

"The Court: Six months consecutive for contempt.

"The Defendant: Fuck your mother with a stick.

"The Court: Another six months consecutive for contempt. OK. Take him out of here now. Make sure the contempt reads 'consecutive,' three contempts.

"The Clerk: The total was a year and three months?

"The Court: A year and three months."

[3] The court stated: "[A] judge in deciding or issuing a contempt citation against someone has to look at the courtroom, and how it appeared the day it happened. It was a Wednesday; it was March 6th; it was Motion Day. There had to be approximately 40 to 50 spectators in the courtroom. For a judge to be sitting as a Judge of the Superior Court in the State of Connecticut to allow a defendant to tell him to go F himself, then to let him go on with a litany of other profanities, and make one finding of contempt, is not conducive to maintaining dignity in the Court, or to have the people respect our Court system. It's very clear to me there were three separate and distinct contempts by [the plaintiff] towards me. . . ."

"Now if a judge, on those facts, is not going to act summarily on three separate, distinct contempts, then our Courts will turn into bedlam and chaos, as we're having in the streets right now, Sir."

than six months. The plaintiff argues that the punishment imposed exceeded the trial court's authority.

An understanding of the trial court's contempt power is necessary in order to evaluate this claim properly. Pursuant to General Statutes § 51-33, "[a]ny court . . . may punish by fine and imprisonment any person who *in its presence* behaves contemptuously or in a disorderly manner; *but no court . . . may impose* a greater fine than one hundred dollars or *a longer term of imprisonment than six months* or both." (Emphasis added.) Thus, "[s]o long as the punishment is kept within the six-month term provided by § 51-33, the court's jurisdiction to impose such punishment summarily is clear." *Moore* v. *State,* supra, 259. In *Moore,* we noted the apparent overlap between § 51-33 and General Statutes § 51-33a.[4] In harmonizing the two statutes so that both may be operative, we stated that "[t]he 'overlap' of the two statutes in respect to contempts occurring in the presence of the court allows the court to proceed to resolve such matters summarily during trial in accordance with § 51-33 . . . or, in an appropriate situation, to defer the adjudication to a later time so that proceedings under § 51-33a may be instituted in accordance with § 990 of the Practice Book." Id., 261; see also *Naunchek* v. *Naunchek,* 191 Conn. 110, 115, 463 A.2d 603 (1983).

Section 988[5] of the Practice Book provides for summary contempt when the contemptuous conduct occurs

---

[4] "[General Statutes] Sec. 51-33a. CRIMINAL CONTEMPT. (a) Any person who violates the dignity and authority of any court, in its presence or so near thereto as to obstruct the administration of justice, or any officer of any court who misbehaves in the conduct of his official duties shall be guilty of contempt and shall be fined not more than five hundred dollars or imprisoned not more than six months or both.

"(b) No person charged with violating this section may be tried for the violation before the same judge against whom the alleged contempt was perpetrated."

[5] "[Practice Book] Sec. 988. [CRIMINAL CONTEMPT——SUMMARY CONTEMPT]——NATURE OF PROCEEDINGS

"A criminal contempt may be punished summarily if the conduct con-

in the trial court's presence and when summary response to it is necessary to maintain order in the courtroom. Section 989[6] of the Practice Book deals with the circumstances under which institution of the contempt proceedings should be deferred until conclusion of the trial and then conducted pursuant to Section 990,[7] the nonsummary contempt provisions.

The applicable statutes and Practice Book provisions clearly show that " '[a] court exercises considerable discretion in dealing with contemptuous conduct occurring in its presence, and its summary adjudication is accorded a presumption of finality.' *State* v. *Melechinsky,* [36 Conn. Sup. 547, 549, 419 A.2d 900 (1980)]. 'From necessity the court must be its own judge of contempts committed within its presence.' *Goodhart* v. *State,* supra [62–63]." *McClain* v. *Robinson,* 189

---

stituting the contempt was committed in the actual presence of the court or the judicial authority and such punishment is necessary to maintain order in the courtroom. A judgment of guilty of contempt shall include a recital of those facts on which the adjudication of guilt is based. Prior to the adjudication of guilt the judicial authority shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by presenting evidence of excusing or mitigating circumstances."

[6] "[Practice Book] Sec. 989. [CRIMINAL CONTEMPT——SUMMARY CONTEMPT]——DEFERRAL OF PROCEEDINGS

"Where the interests of orderly courtroom procedure and substantial justice so dictate, or where the conduct constituting the contempt is in the nature of a personal attack against the judicial authority, the judicial authority should defer institution of contempt proceedings until after the trial is completed, and the proceedings should be conducted pursuant to Sec. 990."

[7] Practice Book § 990 et seq. deals with nonsummary contempt.

"[Practice Book] Sec. 991. [CRIMINAL CONTEMPT——NONSUMMARY CONTEMPT]——NATURE OF PROCEEDINGS

"A criminal contempt not adjudicated under Sec. 987 shall be prosecuted by means of an information. The judicial authority may, either upon his own order or upon the request of the prosecuting authority, issue an arrest warrant for the accused. The case shall proceed as any other criminal prosecution under these rules and the General Statutes."

Conn. 663, 669, 457 A.2d 1072 (1983). In *In re Dodson,* supra, 353, we stated that "[w]here the judge decides to impose sanctions for misconduct, 'ordinarily [the judge should] impose the least severe sanction appropriate to correct the abuse and to deter repetition . . . .' American Bar Association Standards for Criminal Justice (2d Ed. Sup. 1982), Special Functions of the Trial Judge, Standard 6-3.3 . . . ." We also stated that "[s]ummary criminal contempt should not be employed as a means of abuse but courts have the right in appropriate circumstances to employ it to vindicate their dignity and authority upon any interference and to go no further." Id., 376. We conclude that, given the nature of the statements made by the plaintiff to the court, the court had the authority summarily to hold the plaintiff in contempt of court.

We now address whether, consistent with the summary contempt power, the court was authorized to impose a punishment in excess of six months without a jury trial. The plaintiff claims that he was entitled to a jury trial because his aggregated sentence exceeded six months. We agree with the contrary decision of the trial court.

In *Bloom* v. *Illinois,* 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), the United States Supreme Court held that serious contempts are subject to the jury trial provisions of the constitution. The court further stated that "when the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense." Id., 211. Since *Bloom,* "our decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six

months or less are petty crimes." *Codispoti* v. *Pennsylvania,* 418 U.S. 506, 512, 94 S. Ct. 2687, 41 L. Ed. 2d 912 (1974).

The plaintiff relies primarily on *Codispoti* v. *Pennsylvania,* supra, and *Taylor* v. *Hayes,* 418 U.S. 488, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974), in support of his argument that the right to a jury trial attaches absolutely when the penalty imposed is imprisonment for an aggregate period of more than six months. In *Codispoti,* the two petitioners, Codispoti and Langnes, were tried for various acts of contempt that occurred at a prior trial before a different judge.[8] Codispoti's demand for a jury trial was denied. At the conclusion of the trial, the court found that Codispoti had committed seven contemptuous acts and that Langnes had committed six contemptuous acts as charged. Both were given consecutive sentences far in excess of six months. The Pennsylvania Supreme Court affirmed the decision, and the United States Supreme Court granted certiorari limited to the issue of whether the petitioners should have been afforded a jury trial.

In reversing the judgment of the Pennsylvania Supreme Court and holding that each petitioner was entitled to a jury trial, the United States Supreme

---

[8] In the first trial, the petitioners were codefendants with Richard Mayberry. At the conclusion of the trial, Mayberry was sentenced to one to two years for each of eleven contempts committed during trial, for a total sentence of eleven to twenty-two years. Codispoti was sentenced to one to two years for each of seven separate contempts, totaling seven to fourteen years. Langnes was given like sentences for each of six contempts, totaling six to twelve years. The Pennsylvania Supreme Court affirmed the sentences. The United States Supreme Court granted Mayberry's petition for certiorari; *Mayberry* v. *Pennsylvania,* 397 U.S. 1020, 90 S. Ct. 1266, 25 L. Ed. 2d 530 (1970); and vacated the judgment of the Pennsylvania court; *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 466, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971); directing that on remand a different judge hear the contempt charges. *Codispoti* v. *Pennsylvania,* 418 U.S. 506, 507, 94 S. Ct. 2687, 41 L. Ed. 2d 912 (1974).

Court distinguished between the situation where contemptuous conduct is cited and punished instantly, and the situation where the court postpones until after trial punishment for contempts committed during trial. This distinction is based upon the need, or lack thereof, to take immediate action to preserve order in the courtroom. *Codispoti* v. *Pennsylvania,* supra, 514–15.

"There are recurring situations where the trial judge, to maintain order in the courtroom and the integrity of the trial process in the face of an 'actual obstruction of justice,' *In re McConnell,* 370 U.S. 230, 236, 82 S. Ct. 1288, 8 L. Ed. 2d 434 (1962) . . . convicts and sentences the accused or the attorneys for either side for various acts of contempt as they occur. Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished by a term of no more than six months. *Nor does the judge exhaust his power to convict and punish summarily whenever the punishment imposed for separate contemptuous acts during trial equals or exceeds six months."* (Emphasis added.) *Codispoti* v. *Pennsylvania,* supra, 513–14, citing *United States* v. *Seale,* 461 F.2d 345, 355 (7th Cir. 1972).

In this context, the *Codispoti* court noted the necessity of " 'maintain[ing] order and a deliberative atmosphere in the courtroom. The power of a judge to quell disturbance cannot attend upon the impaneling of a jury.' " *Codispoti* v. *Pennsylvania,* supra, 514, quoting *Bloom* v. *Illinois,* supra, 210. " '[A] criminal trial, in the constitutional sense, cannot take place where the courtroom is a bedlam . . . . A courtroom is a hallowed place where trials must proceed with dignity . . . .' *Illinois* v. *Allen,* 397 U. S. 337, 351, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (separate opinion of Douglas, J.) . . . ." *Codispoti* v. *Pennsylvania,* supra. The court concluded its discussion of summary adjudication by stating: "That the total punishment meted out during

trial exceeds six months in jail or prison would not invalidate any of the convictions or sentences, for each contempt has been dealt with as a discrete and separate matter at a different point during the trial." Id., 515.

The *Codispoti* court then explained why that situation should be treated differently from a case where punishment is imposed after trial. "When the trial judge . . . postpones until after trial the final conviction and punishment of the accused or his lawyer for several or many acts of contempt committed during the trial, there is no overriding necessity for instant action to preserve order and no justification for dispensing with the ordinary rudiments of due process." Id. The court continued by noting that "[i]n the context of the *post-verdict adjudication* of various acts of contempt, it appears to us that there is posed the very likelihood of arbitrary action that the requirement of jury trial was intended to avoid or alleviate." (Emphasis added.) Id.

The respondent in *Codispoti* had argued that the petitioners' contempts were separate offenses and that, since no more than a six month sentence was imposed for any single offense, each contempt was a petty offense triable without a jury. The court rejected that argument, noting that "the salient fact remains that the contempts arose from a single trial, were charged by a single judge, and were tried in a single proceeding. The individual sentences imposed were then aggregated, one sentence taking account of the others and not beginning until the immediately preceding sentence had expired." Id., 517. It is important to emphasize, however, that the above discussion of aggregation arose only in the context of postverdict contempt proceedings. This is made all the more apparent by the court's comment: "Neither are we impressed with the contention that today's decision will provoke trial

judges to punish summarily during trial rather than awaiting a calmer, more studied proceeding after trial and deliberating 'in the cool reflection of subsequent events.' *Yates* v. *United States,* 355 U.S. 66, 76 [78 S. Ct. 128, 2 L. Ed. 2d 95] (1957) (footnote omitted). Summary convictions during trial that are unwarranted by the facts will not be invulnerable to appellate review." *Codispoti* v. *Pennsylvania,* supra, 506. We do not read *Codispoti* to prohibit aggregation beyond six months when the sentences are imposed summarily after each separate and distinct contemptuous incident.

The plaintiff, in this case, relies for the contrary contention on *Taylor* v. *Hayes,* supra, in which the petitioner, an attorney representing the accused in a murder trial, was informed by the respondent trial judge on nine different occasions during the trial that he was in contempt of court. At the conclusion of the trial, the petitioner was given a consecutive sentence that in the aggregate totaled approximately four and one-half years imprisonment, including sentences of one year imprisonment on each of two counts. Subsequently, the respondent judge entered a corrected judgment that, inter alia, reduced the sentence on each of the last two counts to six months in jail, but was silent as to whether the sentences were to run consecutively or concurrently. The Court of Appeals affirmed the judgment, ruling that since the amended judgment did not direct that the sentences be served consecutively, they had to be served concurrently, thereby making the penalty actually imposed six months in jail and rendering constitutionally permissible the conviction and sentence without a jury trial. The United States Supreme Court agreed, stating that the contempts, "whether considered singly or collectively, thus constituted petty offenses, and trial by jury was not required." Id., 496.

*Taylor* does not address the issue that is presently before the court. The court in *Taylor* did not have to

decide the aggregation issue due to the amended judgment which was understood to impose no more than a six month sentence. Moreover, even if the aggregation issue had been reached, it would not have been in the context of an immediate summary adjudication, as the sentencing on the contempt charges occurred at the conclusion of the trial, not immediately upon each finding of contempt.

We conclude that neither *Codispoti* nor *Taylor* prohibits the fifteen month sentence imposed by the trial judge in the present case. Those cases are distinguishable from the case currently before the court in that they involved postverdict contempt proceedings. "[A] contemnor must be provided the option of a jury trial on contempt charges when those charges are heard after the conclusion of the trial from which the charges arose, if the defendant may be subject to consecutive sentences cumulating in excess of six months upon conviction on those charges." *United States* v. *Pina,* 844 F.2d 1, 11 (1st Cir. 1988), citing *Codispoti* v. *Pennsylvania,* supra, 515–18.

In the present case, by contrast, punishment for each of three separate contemptuous incidents was imposed immediately upon the occurrence of the contemptuous behavior. "[T]he cumulative punishment for contempt imposed during the course of a trial may exceed six months if the judge acts 'instantly' to deal with each contempt 'as a discrete and separate matter at a different point during the trial.' " *United States* v. *Pina,* supra, 12, quoting *Codispoti* v. *Pennsylvania,* supra, 515. That the present case arose in the context of a motion for bond review rather than during an actual trial does not invalidate the contempt citations, as "[t]he [plaintiff's] conduct took place while the . . . court was 'in session' when the court was actively presiding while engaged in processing the business of the Superior Court." *In re Dodson,* supra, 356.

We therefore hold that the trial court was authorized to sentence the plaintiff to an aggregate sentence of greater than six months, without a jury trial, based upon the three separate and distinct incidents of contemptuous conduct committed in the court's presence.[9] In view of this holding, we must address the plaintiff's argument that he committed no more than one contempt and, therefore, can be punished only for one contempt.

The entire exchange that resulted in the three findings of contempt took place in approximately a thirty second time frame. The plaintiff maintains that based on the facts of this case, there was at most but one incident of contemptuous behavior, and the sentence imposed should have been the three month sentence initially imposed by the trial court, but in no event more than six months. In support of this argument, the plaintiff again relies on *Codispoti* and *Taylor,* as well as *United States* v. *Prewitt,* 553 F.2d 1082, 1089, cert. denied, 434 U.S. 840, 98 S. Ct. 135, 54 L. Ed. 2d 104 (1977), for the proposition that this was "an undifferentiated

---

[9] See *United States* v. *Prewitt,* 553 F.2d 1082, 1088–89, cert. denied, 434 U.S. 840, 98 S. Ct. 135, 54 L. Ed. 2d 104 (1977), where the court noted that "[w]hen a court both cites for contempt and imposes sentence immediately upon the termination of the contemptuous conduct, the defendant is at all times made aware of the consequences of his disruptive behavior. *The immediate imposition of a six month contempt sentence, with the threat of another sentence to be imposed consecutively if he continues to disrupt the proceedings,* might well deter the defendant from further contempts. By contrast, when citation and sentencing are separated the defendant has no way of measuring the consequences of future contemptuous behavior throughout the trial. He is therefore more likely to continue to disrupt the proceedings, only to be met at the conclusion of trial with a contempt sentence that greatly exceeds six months." (Emphasis added.) See also D. Dobbs, "Contempt of Court: A Survey," 56 Cornell L. Rev. 183, 234 (1971) ("Criminal penalties assessed immediately upon a disruptive contempt may . . . have a sound effect in avoiding future disturbances. If such penalties are assessed immediately, the issue concerning aggregation of sentences at the end of trial does not arise.").

mass of contemptuous behavior" and, therefore, the maximum penalty that could be imposed was six months.

The trial court in the present case made a determination that the contempts committed in the courtroom were "separate and distinct." In *United States* v. *Seale,* supra, 354, the court, in its discussion of posttrial adjudication of contempt, noted the problems inherent in a review of such a determination when it stated: "It is true, of course, that appellate courts could review the trial court's determination of discreteness . . . . The difficulty is, however, that the standards of such a review will be amorphous, and the result will be inconsistency of decision. There is hardly anything inevitable about whether disruptive activity occurring during the course of a single trial is viewed as a continuous course of conduct or as a series of isolated instances, and we are at a loss to devise a satisfactory test with which to make that judgment."

The problems noted above likewise exist when the contempt is cited and punished immediately. It is important to note that the primary reason urged by the plaintiff in support of his claim that only one contempt occurred is the temporal proximity of each incident, in that the entire exchange between the plaintiff and the trial judge lasted a very short period of time. This use of hindsight in an attempt to compress three incidents of contempt into one would have the effect of giving the plaintiff a "free ride" on the second two profanities uttered to the court. We cannot accept such an unreasonable result. We therefore uphold the trial court's determination that three incidents of contempt occurred and were punished by the court. The authorization for the punishment imposed for these three incidents can be found in § 51-33, as well as in the case law previously cited and discussed. Although endowed with the authority to impose consecutive sentences of

contempt for consecutive incidents of misconduct, the trial court should ordinarily temper its recourse to that power with the exercise of judicial restraint. Whenever possible, the trial court should rely on its superior ability to defuse confrontation in lieu of invoking its power to impose sanctions for contempt.

## II

The plaintiff next argues that he was not given proper notice and an opportunity to be heard before summary contempt was found and punishment was imposed. According to the plaintiff, his due process rights were violated in that he was only given one opportunity to speak, yet was sentenced for three separate incidents of contempt, thus violating Practice Book § 988.[10]

The United States Supreme Court has "stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.' " *Groppi* v. *Leslie,* 404 U.S. 496, 502, 92 S. Ct. 582, 30 L. Ed. 2d 632 (1972), quoting *In re Oliver,* 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 2d 682 (1948). "Even where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.' *Groppi* v. *Leslie,* supra, [504] . . . ." *Taylor* v. *Hayes,* supra, 498. However, "[t]he United States Supreme Court [also] 'has often recognized that the requirements of due process cannot be ascertained through mechanistic application of a formula.' *Groppi* v. *Leslie,* [supra, 500]. The essence of due process is fundamental fairness. *United States ex rel. Crist* v. *Lane,* 745 F.2d 476, 482 (7th Cir. 1984), cert. denied, 471 U.S. 1068, 105 S. Ct. 2146, 85 L. Ed. 2d 503 (1985). Due process is an element that, when

---

[10] See footnote 5, supra.

absent, produces the reaction given to that which is 'shocking to the universal sense of justice.' *United States* v. *Russell,* 411 U.S. 423, 432, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973). Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. *Williams* v. *Bartlett,* 189 Conn. 471, 476, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983); *Lee* v. *Board of Education,* 181 Conn. 69, 73, 434 A.2d 333 (1980)." *In re Dodson,* supra, 362–63.

In *In re Dodson,* the petitioner argued that he had been denied the due process provided for by § 988, in that the contempt against him did not include " 'a recital of those facts in which adjudication of guilt is based.' " Id., 364. We stated there that "[t]he lack of a 'mechanistic application' . . . of Practice Book § 988 should not serve to defeat its due process requirements if they were substantively met." Id., 363. Applying this principle, we held that since the petitioner knew or should have known that he was " 'out of order,' " and since he "clearly understood the trial judge's perception of his conduct," the finding could not be avoided due to a lack of literal compliance with § 988. Id., 364.

Similarly, in the present case, after the first finding of contempt, the plaintiff knew or should have known that subsequent profanities would result in additional contempts. After the first obscenity, the transcript reveals the following:

"The Court: OK. Mr. Jackson—bring him back. For that statement, I'm finding you in contempt of Court, for saying an obscenity in this courtroom. Do you understand that?

"The Defendant: So what? So what?

"The Court: Do you have any reason why I should not find you in contempt? OK.

"The Defendant: Why shouldn't you?

"The Court: OK. Ninety days for contempt."

Instead of refraining from such conduct after the finding of contempt, the plaintiff uttered another profanity that was met with another finding of contempt. This pattern was repeated when a third profanity was uttered to the court. Given the circumstances of this case, we hold that the Practice Book was substantially complied with, as the plaintiff had been put on notice that his conduct would result in further findings of contempt. See *In re Dodson,* supra. Lack of literal compliance with Practice Book § 988 does not invalidate the trial court's findings of contempt.

### III

The plaintiff's third argument is that the contempt proceedings should not have been adjudicated by the same judge against whom the contempt was perpetrated. The defendant argues that the issue of judicial bias was not properly raised below and, therefore, is not reviewable on appeal. In *In re Dodson,* supra, 368, we reached the merits of a similar claim despite the fact that "nothing on the record . . . suggest[ed] that [the petitioner] or his counsel ever raised the matter of the recusal of the trial judge in the trial court." We similarly decide to reach the merits of the plaintiff's claim in the present case.

"*Mayberry* v. *Pennsylvania,* [supra, 465–66,] held . . . that the fair administration of justice disqualifies a judge from sitting in judgment on a contempt charge if he has become so personally embroiled with a contemnor that it is unlikely for him 'to maintain that calm detachment necessary for fair adjudication.' Id., 465. . . . In determining when due process demands recusal, we recognize, however, that neither *Mayberry* v. *Pennsylvania* nor *Taylor* v. *Hayes,* [supra, 501–503], also requiring referral to a different judge, arose in the context of an immediate summary adjudication of con-

tempt during the course of a trial. A trial court must have latitude in the preservation of courtroom control. *Sacher* v. *United States,* [343 U.S. 1, 8, 72 S. Ct. 451, 96 L. Ed. 2d 717, reh. denied, 343 U.S. 931, 72 S. Ct. 746, 96 L. Ed. 1341 (1952)]; *Cooke* v. *United States,* 267 U.S. 517, 534, 45 S. Ct. 390, 69 L. Ed. 2d 767 (1925)." *Naunchek* v. *Naunchek,* supra, 116–17. In *Naunchek,* therefore, we held that "a summary contempt conviction during the course of a trial, whose very timing bears witness to the trial court's judgment that the effective administration of justice requires an immediate judicial response, cannot be overturned without substantial evidence of personal embroilment on the part of the presiding judge." Id., 117.

Applying these principles to this case, we must examine the record to determine whether the plaintiff's claim of personal embroilment has been factually substantiated. "*Mayberry* v. *Pennsylvania* and *Taylor* v. *Hayes* teach us that we must appraise both the conduct of the contemnor and the reaction of the judge. While personal embroilment is a more likely reaction when the contemnor has mounted a personal attack on the judge, it may also be found in the character of the judge's response, if the judge has become visibly involved in a running controversy with the contemnor." *Naunchek* v. *Naunchek,* supra, 118. "In making this ultimate judgment, the inquiry must be not only whether there was actual bias on [the trial judge's] part, but also whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.' *Ungar* v. *Sarafite,* 376 U.S. 575, 588, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)." *Taylor* v. *Hayes,* supra, 501; see also *In re Dodson,* supra, 371.

On the record before us, it does not appear that the plaintiff's conduct was a "personal attack" on the trial

judge, nor that the trial judge ever became embroiled in a "running controversy" with the plaintiff. On the contrary, it shows a judge taking appropriate measures to maintain order in his courtroom. The record reflects that after the plaintiff exited the courtroom in a loud and boisterous manner, the trial judge ordered him brought back and warned him that his disruptive attitude would only hurt him in the courtroom. The response to this was an obscenity uttered by the plaintiff for which he was found in contempt. After the sentence was imposed for this contempt, the plaintiff hurled another profanity at the court, for which the court made another finding of contempt. After imposing the sentence for the second contempt, the plaintiff uttered his third obscenity to the court, resulting in the final contempt citation.

"The use of [the summary contempt] power cannot be constrained by the [plaintiff] simply through the expediency of directing personal insults at the judge: the judge may exercise the contempt power regardless of whether he or she is the subject of attack [absent evidence of personal embroilment by the judge]. . . . It should be emphasized that . . . an unruly [plaintiff] achieves nothing by directing insults at the trial judge. The trial judge at all times retains his power of contempt, *including the ability summarily to try and sentence the [plaintiff] for up to six months imprisonment upon each occurrence of contempt.*" (Emphasis added.) *United States* v. *Pina,* supra, 15–16.

The record does not establish a statutory or a constitutional basis for a requirement that adjudication of these contempts should have been referred to a different judge.

The judgment is affirmed.

In this opinion the other justices concurred.