### JULIA NAUNCHEK *v.* PETER NAUNCHEK ET AL.
### (10897)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued June 7—decision released August 16, 1983

*John M. Creane,* with whom, on the brief, was *Rachel J. Minter,* for the appellant (plaintiff).

*Harry W. Hultgren, Jr.,* with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant Judge N. O'Neill).

PETERS, J. This case concerns the power of a trial court to impose summary sanctions for criminal contempt upon a pro se litigant who repeatedly refuses to obey the orders of the court. The conduct which led to the convictions for contempt arose out of a civil jury trial in which Julia Naunchek, appearing pro se, was the plaintiff.[1] The trial court held the plaintiff in contempt of court under General Statutes § 51-33[2] because of her statements during the course of the trial. On two consecutive days she was sentenced, first to ten days imprisonment, and then to twenty days imprisonment, effective at the end of the trial. Upon the conclusion of the trial and the execution of the sentences, which cumulatively ordered the plaintiff to serve thirty days at the Connecticut Correctional Institution at Niantic, the plaintiff filed a writ of error to this court challenging the legality of her convictions for contempt.

The June 11, 1981 incident, which led to the first finding of contempt, occurred after the court had ordered the plaintiff not to interrupt the witnesses whom she was examining. When the plaintiff continued to interject her objections into the testimony of the witness Mark Shipman, the court ordered the plaintiff

---

[1] In the original action, the plaintiff had charged the defendants with "joint fraud, conspiracy and misconduct" in connection with prior divorce and partition actions. Judgment on a jury verdict for the defendants was rendered on June 25, 1981. The plaintiff's appeal from that judgment was dismissed by this court on July 7, 1982, after a nisi decree, for failure to prosecute with proper diligence. Practice Book §§ 3012 (c) and (d), 3109.

[2] "[General Statutes] Sec. 51-33. PUNISHMENT FOR CONTEMPT OF COURT. Any court may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both."

to put her hand over her mouth, or to have her mouth taped, until the witness had answered the question. After the plaintiff, with the assistance of a matron, had covered her mouth, the court instructed the plaintiff not to move her hand until it had told her to do so. The plaintiff then said: "You've been threatening me since I've been here," and the court found her in contempt. The record reveals that the trial court, the same day, sentenced the plaintiff to imprisonment at the state prison for women "for the term of 10 days effective at the conclusion of trial of Case No. 21 86 70."

The June 12, 1981 incident, which led to the second finding of contempt, occurred after the court had ordered the plaintiff, when examining witnesses, to refrain from calling them liars. The plaintiff persisted, saying to the witness Chester Sledzik: "Mr. Sledzik, you are lying." The court, after characterizing the plaintiff's statement as "absolutely outrageous," explained to the plaintiff that it was the jury's role to believe or not to believe a witness. When the plaintiff continued to protest, the court excused the jury and told the plaintiff that she was in contempt "because of the fact you have just referred to this witness as telling a lie." In the absence of the jury, the court then gave the plaintiff an opportunity to apologize to the witness and to purge herself of contempt. The plaintiff refused to apologize. The court thereupon found her in contempt and sentenced her to an additional twenty days of imprisonment, again effective upon the conclusion of the ongoing civil jury trial.

The plaintiff's writ of error raises three issues. She claims that: (1) her conduct did not constitute contempt of court; (2) her alleged contempt should not have been adjudicated by the same judge against whom the alleged contempt was perpetrated; and (3) her adjudi-

cation for contempt violated her liberty interests under the constitutions of the United States and of the state of Connecticut.[3] We find no error.

Before we consider these various claims of error, it is important to note what is not at issue. The plaintiff recognizes that a conviction for criminal contempt can only be reviewed by a writ of error; *McClain* v. *Robinson,* 189 Conn. 663, 665, 457 A.2d 1072 (1983); *Moore* v. *State,* 186 Conn. 256, 257, 440 A.2d 969 (1982); and that review pursuant to a writ of error is limited to matters appearing as of record. *McClain* v. *Robinson,* supra, 668; *State* v. *Assuntino,* 180 Conn. 345, 347, 429 A.2d 900 (1980); *Goodhart* v. *State,* 84 Conn. 60, 62–63, 78 A. 853 (1911). The plaintiff does not deny that trial courts have summary contempt power to deal with contumacious conduct that occurs in open court and in the immediate view of the judge. *McClain* v. *Robinson,* supra, 667–70; *Moore* v. *State,* supra, 259; *Goodhart* v. *State,* supra, 63. The plaintiff does not contend that the trial judge was actually biased against her. The plaintiff does not dispute the validity of the underlying orders of the trial court, nor does she maintain that she failed to understand them, that she lacked the mental capacity to comply or that her noncompliance was unintentional. Finally, the plaintiff does not argue that

---

[3] The fourteenth amendment to the United States constitution provides, in § 1:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 10 of the Connecticut constitution provides:

"RIGHT OF REDRESS FOR INJURIES. Sec. 10. All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

the sentences imposed, even viewed cumulatively, exceed the statutory limitations of six months imposed by the governing statute. See General Statutes § 51-33.

Bearing in mind the foregoing constraints on the scope of the plaintiff's appeal, we address first her claim that her conduct did not as a matter of law constitute criminal contempt of court. The plaintiff argues that because her conduct was less extreme than that of others found in contempt, we must conclude that her behavior was only the overzealous presentation of a pro se litigant unschooled in the niceties of courtroom behavior. She maintains that her conduct, although concededly indiscreet and inappropriate, did not materially disrupt the trial or obstruct justice. We disagree.

Pro se status does not give a litigant license to disregard the express orders of the court presiding over the trial. The record indicates that the trial court gave the plaintiff repeated instructions about the limits of permissible examination of witnesses and that she wilfully refused to observe the limits that had been set. She refused to avail herself of a proffered opportunity to purge herself of her second contempt. In these circumstances, the trial court was entitled to conclude that her flagrant disregard of its orders was so disruptive of the progress of the trial as to warrant findings of criminal contempt. See *United States* v. *Wilson,* 421 U.S. 309, 315-16, 95 S. Ct. 1802, 44 L. Ed. 2d 186 (1975).

The plaintiff's second claim is that her citation for contempt should not have been adjudicated by the same judge before whom the allegedly contumacious conduct occurred. According to the plaintiff, this case should have been handled pursuant to General Statutes

§ 51-33a[4] rather than § 51-33, which the trial court invoked. We conclude that, in the present circumstances, the trial court was not foreclosed from reliance upon § 51-33.

We have only recently addressed the relationship between General Statutes §§ 51-33 and 51-33a, both of which regulate contumacious conduct committed in the presence of the court. As a matter of statutory construction, we held in *Moore* v. *State,* 186 Conn. 256, 261, 440 A.2d 969 (1982), that the apparent overlap between the statutes can be reconciled by permitting a trial court either to act summarily, during the trial, in accordance with § 51-33, or to defer adjudication to a later time, in "an appropriate situation," so that proceedings may be instituted under § 51-33a before a different judge.[5]

The plaintiff advances two arguments why the present case is "an appropriate situation" for deferred adjudication pursuant to § 51-33a rather than for immediate disposition pursuant to § 51-33. The plaintiff alleges that the trial court, by its own act of deferring sentence for the contempt of June 11 to the following day, signalled that there was no compelling need for summary action. The plaintiff also alleges that the trial court had

---

[4] "[General Statutes] Sec. 51-33a. CRIMINAL CONTEMPT. (a) Any person who violates the dignity and authority of any court, in its presence or so near thereto as to obstruct the administration of justice, or any officer of any court who misbehaves in the conduct of his official duties shall be guilty of contempt and shall be fined not more than five hundred dollars or imprisoned not more than six months or both.

"(b) No person charged with violating this section may be tried for the violation before the same judge against whom the alleged contempt was perpetrated."

[5] At oral argument, the plaintiff argued that the trial court had not only failed to comply with the proper statute but had also ignored the requirements of Practice Book § 987 et seq. These rules, however, deal only with procedure in criminal cases and therefore do not govern civil cases like the one presently before us.

become so personally embroiled with the plaintiff that adjudication for contempt should have been referred to a different judge.

The plaintiff's first argument cannot survive scrutiny of the record, by which we are bound on a writ of error. The plaintiff relies on the transcript of proceedings on June 11, which indicates that she was found in contempt but contains nothing about the sentence imposed. This transcript is, however, incomplete, since only a fragment of the June 11 proceedings has been preserved for this appeal. Our printed record contains a judgment that the plaintiff was, "on the 11th day of June, 1981," found in contempt of court under § 51-33 and "was by said Court on the 11th day of June, 1981, sentenced to imprisonment to state prison for women, for the term of 10 days effective at the conclusion of trial of Case No. 21 86 70." It is therefore clear, on this record, that the trial court's action was consistent with its view that the plaintiff's conduct required a summary response.[6]

The plaintiff's second argument requires an analysis of the significance of "embroilment." We determined, in *Moore* v. *State,* supra, that § 51-33a was enacted in response to *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 465–66, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971). In our interpretation of our contempt statutes, we must therefore take account of constitutional principles of due process that affect the adjudication of contempt. *Mayberry* v. *Pennsylvania,* held (pp. 465–66) that the fair administration of justice disqualifies a judge from sitting in judgment on a contempt charge if he has

---

[6] The plaintiff attaches no special significance to the deferral of the execution of her sentences and neither do we. Since the plaintiff was representing herself in the civil action that she had initiated, the efficient administration of justice was served by deferring execution until the conclusion of the civil trial.

become so personally embroiled with a contemnor that it is unlikely for him "to maintain that calm detachment necessary for fair adjudication." Id., 465. We are mindful of the oft-quoted statement of Justice Robert Jackson in *Sacher* v. *United States,* 343 U.S. 1, 8, 72 S. Ct. 451, 96 L. Ed. 717, reh. denied, 343 U.S. 931, 72 S. Ct. 746, 96 L. Ed. 1341 (1952), that "[s]ummary punishment always, and rightly, is regarded with disfavor and, if imposed in passion or pettiness, brings discredit to a court as certainly as the conduct it penalizes." See R. Goldfarb, The Contempt Power, pp. 253–57 (1963). We agree, therefore, with the plaintiff's contention that significant evidence of personal embroilment would constitute an appropriate situation for deferred adjudication or deferred sentencing before a different judge. In determining when due process demands recusal, we recognize, however, that neither *Mayberry* v. *Pennsylvania* nor *Taylor* v. *Hayes,* 418 U.S. 488, 501–503, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974), also requiring referral to a different judge, arose in the context of an immediate summary adjudication of contempt during the course of a trial. A trial court must have latitude in the preservation of courtroom control. *Sacher* v. *United States,* supra; *Cooke* v. *United States,* 267 U.S. 517, 534, 45 S. Ct. 390, 69 L. Ed. 767 (1925). We hold, therefore, that a summary contempt conviction during the course of a trial, whose very timing bears witness to the trial court's judgment that the effective administration of justice requires an immediate judicial response, cannot be overturned without substantial evidence of personal embroilment on the part of the presiding judge. See *Cooke* v. *United States,* supra, 539; American Bar Association, Standards for Criminal Justice, Standard 6-4.5 (2d Ed. 1980).[7]

---

[7] "Standard 6-4.5. REFERRAL TO ANOTHER JUDGE

"'The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the

Applying these principles to the present case, we must inquire whether the record demonstrates that the trial judge was in fact so personally embroiled that the plaintiff's conviction cannot stand. *Mayberry* v. *Pennsylvania* and *Taylor* v. *Hayes* teach us that we must appraise both the conduct of the contemnor and the reaction of the judge. While personal embroilment is a more likely reaction when the contemnor has mounted a personal attack on the judge, it may also be found in the character of the judge's response, if the judge has become visibly involved in a running controversy with the contemnor. "[T]he inquiry must be . . . whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.' *Ungar* v. *Sarafite,* 376 U.S. 575, 588 [84 S. Ct. 841, 11 L. Ed. 2d 921, reh. denied, 377 U.S. 925, 84 S. Ct. 1218, 12 L. Ed. 2d 217] (1964)." *Taylor* v. *Hayes,* supra, 501.

On the record before us, the plaintiff's claim of embroilment has not been factually substantiated. With regard to the first citation of contempt, the plaintiff complained to the trial court of harassment and intimidation after the court had threatened to have the sheriff put tape on the plaintiff's mouth unless she covered it with her own hand while a witness was completing his answer to the plaintiff's question. The court's finding of contempt, upon the plaintiff's initial refusal to comply, was followed by orderly questions and answers, so that the court shortly thereafter said: "All right, Mrs. Naunchek, you seem to be doing well with your hand over your mouth. You can stop doing it. I hope

matter to another judge if the original judge's conduct was so integrated with the contempt so as to have contributed to it or was otherwise involved, or if the original judge's objectivity can reasonably be questioned." American Bar Association, Standards for Criminal Justice (2d Ed. 1980).

you've gotten in the habit of being quiet while the witness is answering." This dialogue shows neither a sustained personal attack on the judge nor running controversy with the plaintiff. On the contrary, it shows a judge accomplishing his goal of assuring an orderly trial. With regard to the second contempt citation, the evidence of embroilment is even more ephemeral. Although the trial court expressed its outrage at the plaintiff's persistence in calling a witness a liar, the court immediately excused the jury in order to afford the plaintiff an opportunity to retract her statement and to purge herself of contempt. In its totality, this evidence reveals, apart from some minor impatience, the exercise of considerable control and reasonable restraint in the trial court's response to the plaintiff's repeated violations of the court's orders. This record does not establish either a statutory or a constitutional basis for a requirement that adjudication of these contempts should have been referred to a different judge. See *In re Buckley*, 10 Cal. 3d 237, 255–58, 514 P.2d 1201, 110 Cal. Rptr. 121 (1973).

The plaintiff's third claim of error alleges a deprivation of constitutional rights to due process. That claim, however, merely reiterates the argued impermissibility of summary adjudication by the trial court before whom the contumacious conduct occurred. Because we have already addressed the constitutional implications of that argument, we need not consider this claim further.

There is no error.

In this opinion the other judges concurred.