DENNIS HIGGINS *v.* TIMOTHY J. LISTON,
STATE'S ATTORNEY
(AC 24547)

Lavery, C. J., and Foti and Schaller, Js.

---

Argued January 19—officially released April 26, 2005

 

*Neal Cone,* senior assistant public defender, for the plaintiff in error.

*Michele C. Lukban,* assistant state's attorney, with whom, on the brief, were *Timothy J. Liston,* state's attorney, and *John Cashmon,* supervisory assistant state's attorney, for the defendant in error.

*Opinion*

FOTI, J. The plaintiff in error, Dennis Higgins, seeks reversal of the judgment of the trial court summarily finding him in criminal contempt of court. The plaintiff in error claims that (1) he had a right, under our state and federal constitutions, to be represented by counsel during the summary contempt proceeding, that he was not represented by counsel during the proceeding and that he neither knew of nor waived his right to be represented by counsel, and (2) the court abused its discretion by imposing the punishment that it did. We affirm the judgment of the trial court.

The record reveals the following facts. On March 13, 2003, pursuant to a plea agreement with the state, the plaintiff in error entered a plea of guilty under the *Alford* doctrine[1] to one count of selling narcotics in violation of General Statutes § 21a-277 (a). The court accepted

---

[1] See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

the plea. On May 15, 2003, the plaintiff in error appeared before the court for sentencing. At that time, the attorney for the plaintiff in error informed the court that the plaintiff in error wanted to obtain a transcript of the plea proceeding because the plaintiff in error believed that he had "entered a plea to a completely different charge." The court continued the sentencing proceeding to accommodate the request.

On May 29, 2003, the plaintiff in error appeared before the court for sentencing. The plaintiff in error, both through his counsel and directly, asked the court to continue the hearing. The plaintiff in error informed the court that he wanted to obtain additional transcripts from prior court proceedings related to his case and that he may want to withdraw his plea. The plaintiff in error stated that he had the right to refuse to "take" the plea.

The court recessed the hearing and, after reconvening the hearing, informed the plaintiff in error that it had examined the plea proceeding and concluded that it was "in order." The plaintiff in error again asked for a continuance and the opportunity to withdraw his plea. His attorney indicated that the plaintiff in error claimed that at the time of the plea, he was not aware that he was pleading guilty to a charge of sale of narcotics. The court informed the plaintiff in error that in light of its review of the transcript of the proceeding in which the plaintiff in error entered his plea, it was "virtually impossible" that he could have thought he was pleading guilty to anything except the crime of sale of narcotics.

The court permitted the plaintiff in error to discuss why he wanted to withdraw his plea. The plaintiff in error discussed the difficulties that he likely would face if he chose to proceed to trial, and complained about his dissatisfaction with his attorney and his inability to obtain information relevant to his case. The court

informed the plaintiff in error that his complaints were not relevant and attempted to discuss his sentence, but the plaintiff in error repeatedly interrupted the court, asking to be heard on his request to withdraw his plea. The court instructed the plaintiff in error to stop talking. The plaintiff in error continued to interrupt the court. The following exchange between the plaintiff in error and the court followed:

"The Court: I'm telling you to stop talking. Do you understand that? Okay.

"[The Plaintiff in Error]: Ain't this something. I'm getting—I'm getting railroaded.

"The Court: That's right.

"[The Plaintiff in Error]: I mean, just throw—

"The Court: Okay.

"[The Plaintiff in Error]:—a rope over a rafter and hang me.

"The Court: All right.

"[The Plaintiff in Error]: Lynch me. Lynch me.

"The Court: On the—the state want to remark any further?

"[The Prosecutor]: Nothing further.

"The Court: Okay. All his rights are preserved. There's a transcript of this.

"[The Plaintiff in Error]: Rights weren't preserved. I've asked—I've asked for counsel to be removed, and a judge told me, no, I couldn't do that.

"The Court: Okay. On the count—

"[The Plaintiff in Error]: I had a grievance against him and—and everybody looked past that.

"The Court: On the count the [plaintiff in error pleaded] guilty to, I'll sentence him to the custody of the commissioner of correction for a period of four and one-half years.

"[The Plaintiff in Error]: Crackerville. That's what this is.

"The Court: What?

"[The Plaintiff in Error]: Crackerville. Fuck you.

"The Court: Come on back.

"[The Plaintiff in Error]: Come on, man.

"The Court: See, you can—you can say whatever you want. This is—this is a game that you play when you're in court but you can't say fuck in court and—

"[The Plaintiff in Error]: I was—I was leaving the courtroom.

"The Court: You cannot say fuck—the fuck word in court because there's court personnel here. It's demoralizing to them. It interferes with the administration of justice. Do you know of any reason why I shouldn't hold you in contempt?

"[The Plaintiff in Error]: Well, I mean, you can—

"The Court: Hearing none—

"[The Plaintiff in Error]:—you can—you can—you can do whatever you want, Your Honor.

"The Court: I'm—

"[The Plaintiff in Error]:—because—I mean—

"The Court:—I'm going to do—I'm going to do—

"[The Plaintiff in Error]:—and, you know—to the—to the ladies and anybody who had—

"The Court: Yes.

"[The Plaintiff in Error]:—I apologize for the word fuck.

"The Court: Okay. And on the—hearing no reasonable explanation for the way you acted in—in court, I find you in contempt. I sentence you to the custody of the commissioner of correction for a period of six months consecutive to the four and one-half years that you were just sentenced to.

"[The Plaintiff in Error]: Hmm.

"The Court: You're all set. Go with the marshals, please.

"[The Plaintiff in Error]: I appreciate that. Thank you, Your Honor.

"The Court: Okay.

"[The Plaintiff in Error]: You have a nice day.

"The Court: Any time.

"[The Plaintiff in Error]: Have a good life.

"The Court: We're here to accommodate you any other time, too."

The court later issued a memorandum of decision concerning its contempt judgment. The court discussed the events related to the judgment. The court stated that the plaintiff in error persisted in talking after it had informed him that his complaints were not relevant. The court stated that it ordered the plaintiff in error to stop talking to "bring the proceedings under control . . . ." The court also noted that it did not respond to his statement that he was being "lynched" and did not at any time become embroiled with him. After discussing the events related to the judgment, the court made findings and set forth the basis for its decision as follows: "In an insincere fashion, the [plaintiff in error] offered an apology. His apology was not to the

court, but to the other court personnel who heard his profanity. I then sentenced him in accordance with the finding of contempt. The court imposed a sentence of six months consecutive to his sentence to punish the [plaintiff in error] for his intentional and wilful disrespect for the court. More important, however, was the need to punish the [plaintiff in error] for his disruption of the court proceedings. Although the [plaintiff in error] repeatedly interrupted the proceedings and continuously attempted to take control of the sentencing, it was not until he intentionally engaged in profane and provocative language that the court saw a need to act.

"At the moment the [plaintiff in error] cursed at the court, his intention to obstruct justice was clear; the courtroom was fully staffed, and the audience contained spectators, attorneys and other defendants. The [plaintiff in error's] language could not be ignored. To do so would have encouraged others to believe that similar disruption and disrespectful conduct would be tolerated in the future. In order to maintain control of the courtroom a contempt finding was necessary. The [plaintiff in error's] attempt to apologize was addressed only to the females present. The [plaintiff in error's] actions followed a clear pattern of escalation (interruption, obfuscation, insulting) finally culminating in his profane outburst. A finding of contempt was, therefore, placed on the record, and the punishment was imposed."

The plaintiff in error subsequently appealed from his underlying criminal conviction, which this court affirmed. *State* v. *Higgins*, 88 Conn. App. 302, 310, 869 A.2d 700 (2005). The plaintiff in error, pursuant to Practice Book § 72-1 et seq., also filed the present writ.[2]

---

[2] A writ of error is the "sole method of review" of summary criminal contempt proceedings. *Moore* v. *State*, 186 Conn. 256, 257, 440 A.2d 969 (1982).

Our Supreme Court, pursuant to Practice Book § 65-1, transferred the appeal to this court.

"[I]n a review of summary criminal contempt, the inquiry is limited to a determination of the jurisdiction of the court below. . . . Subsumed in this inquiry are three questions, namely, (1) whether the designated conduct is legally susceptible of constituting a contempt . . . (2) whether the punishment imposed was authorized by law . . . and (3) whether the judicial authority was qualified to conduct the hearing." (Citations omitted; internal quotation marks omitted.) *Banks* v. *Thomas*, 241 Conn. 569, 589, 698 A.2d 268 (1997).

I

The plaintiff in error first raises a due process claim. He claims that he had a right, under our state and federal constitutions, to be represented by counsel during any summary contempt proceedings. Specifically, he claims that the sixth amendment to the United States constitution,[3] the due process clause of the fourteenth amendment to the United States constitution,[4] and article first,

___

[3] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The sixth amendment right to counsel is made applicable to the states through the due process clause of the fourteenth amendment. *Gideon* v. *Wainwright*, 372 U.S. 335, 342–44, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (applying sixth amendment right to counsel).

[4] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

§§ 8 and 9, of the constitution of Connecticut[5] afford him that right. The plaintiff in error asserts that despite the fact that his counsel was present during the summary contempt proceeding, counsel did not represent him during that proceeding and that he neither knew of nor waived his right to be represented by counsel. We reject that claim.

"Criminal contempt, as distinguished from civil contempt, is conduct that is directed against the dignity and authority of the court. . . . Sanctions are imposed in order to vindicate that authority." (Citation omitted; internal quotation marks omitted.) *McClain* v. *Robinson*, 189 Conn. 663, 665–66, 457 A.2d 1072 (1983); see also Practice Book §§ 1-13A and 1-14. "The expression dignity of the court proclaims a demand, to all dealing with the court, for proper respect and obedience in its function of interpreting, administering and enforcing the law within its authority to do so. . . . Authority can be and has been said to mean the [r]ight to exercise powers; to implement and enforce laws; to exact obedience; to command; to judge. . . . [It is] [o]ften synonymous with power. . . . In a free society, the courtroom is a forum for the courteous and reasoned pursuit of

---

[5] The constitution of Connecticut, article first, § 8, provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

The constitution of Connecticut, article first, § 9, provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

truth and justice. . . . These concepts meaningfully embody that view of dignity and authority that should attend the proper, independent and fair discharge by the court of its duties under the rule of law." (Citations omitted; internal quotation marks omitted.) *In re Dodson*, 214 Conn. 344, 349–50, 572 A.2d 328, cert. denied sub nom. *Dodson* v. *Superior Court*, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990).

The court may summarily adjudicate and punish criminal contempt that occurs in its presence and obstructs the orderly administration of justice. "[T]he sole credible basis for the summary contempt process is necessity, a need that the assigned role of the judiciary be not frustrated. . . . Although this judicial power is as ancient as the courts to which it is attached and as ancient as any other part of the common law . . . it should be exercised sparingly and in accordance with the requirements of due process. Summary criminal contempt should not be employed as a means of abuse but courts have the right in appropriate circumstances to employ it to vindicate their dignity and authority upon any interference and to go no further." (Citations omitted; internal quotation marks omitted.) Id., 375–76. "A trial court must have latitude in the preservation of courtroom control." *Naunchek* v. *Naunchek*, 191 Conn. 110, 117, 463 A.2d 603 (1983).

In summary contempt proceedings, the court may announce punishment summarily. "Under such circumstances, no witnesses are required in proof of the contempt, and the court has inherent power to impose punishment on its own knowledge and of its own motion without formal presentation or hearing of the person adjudged in contempt . . . ." (Internal quotation marks omitted.) *McClain* v. *Robinson*, supra, 189 Conn. 666. " 'Summary' in this context has been said not to refer to the timing of the action with reference to the offense but refers rather to a procedure which

dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, to bring evidence, awaiting briefs and the like. . . . The term refers to the character of the proceedings, not its timing; it does not demand instant punishment." (Citation omitted.) *In re Dodson,* supra, 214 Conn. 366 n.16. Under our rules of practice, "[p]rior to any finding of guilt, the judicial authority shall inform the defendant of the charges against him or her and inquire as to whether the defendant has any cause to show why he or she should not be adjudicated guilty of summary criminal contempt by presenting evidence of acquitting or mitigating circumstances. . . ." Practice Book § 1-16. Our Supreme Court, however, has stated that substantial compliance with, rather than mechanistic applications of, that rule satisfies due process rights. *Jackson* v. *Bailey,* 221 Conn. 498, 514, 605 A.2d 1350, cert. denied, 506 U.S. 875, 113 S. Ct. 216, 121 L. Ed. 2d 155 (1992). Few procedural safeguards are present because of the nature of summary contempt proceedings. For that reason, courts are historically "wary of the power [exercised in summary criminal contempt proceedings] and cognizant of its potential for abuse." (Internal quotation marks omitted.) *Banks* v. *Thomas,* supra, 241 Conn. 588. Punishment imposed as a result of a summary criminal contempt conviction is regulated by statute. See General Statutes § 51-33.[6]

---

[6] The court and the writ of error filed by the plaintiff in error state that he was found to be in criminal contempt of court pursuant to General Statutes § 51-33a. That statute, however, does not apply to cases, such as the one here, involving summary criminal contempt proceedings, which are regulated by General Statutes § 51-33. Although both statutes regulate the punishment that may be imposed for criminal contempt committed in the presence of the court, § 51-33 allows the court, as it did in this case, to proceed to resolve such matters summarily at the time of the contumacious conduct, and § 51-33a allows the court, in an appropriate situation, to defer the adjudication to a later time so that proceedings may be instituted before a judge other than the one before whom the conduct occurred. See *Moore* v. *State,* 186 Conn. 256, 260–61, 440 A.2d 969 (1982).

The plaintiff in error claims that a right to counsel exists because a summary criminal contempt proceeding is a criminal prosecution for a criminal offense, to which the right to counsel clearly applies. Our Supreme Court consistently has held that summary contempt proceedings are not criminal prosecutions.

In *State* v. *Jackson*, 147 Conn. 167, 168, 158 A.2d 166 (1960), the defendant, a member of the bar of this state, summarily was convicted of criminal contempt by a city court in Danbury for a contempt committed in the presence of the court. The defendant appealed from his contempt conviction to the Court of Common Pleas, which dismissed the case for lack of jurisdiction. Id. The defendant appealed from the dismissal to our Supreme Court, arguing that he had a statutory right to appeal because his contempt conviction was a prosecution for a criminal offense. Id. The Supreme Court held that the claimed right of appeal existed only for convictions of " 'criminal offense[s].' " Id., 170. In determining that the appeal was dismissed properly, the court distinguished criminal offense convictions from summary contempt convictions. "In this class of contempt, the proceedings are criminal in nature but do not constitute a criminal prosecution. . . . They are for an offense against the court as an organ of public justice and not for a violation of the criminal law." (Citations omitted.) Id., 169.

In *Moore* v. *State*, 186 Conn. 256, 440 A.2d 969 (1982), the plaintiff in error brought a writ of error seeking reversal of his summary contempt conviction. The plaintiff in error "had been called as a witness for the state in a criminal prosecution, took the witness stand and thereafter refused to answer certain questions asked of him by the state when ordered to do so by the court, even though after consultation with his counsel it was stipulated that none of the required answers concerned matters about which he could claim a privi-

lege." Id., 258. For that conduct, the trial court summarily adjudged the plaintiff in error in contempt and imposed a six month term of imprisonment. Id. On appeal, the plaintiff in error claimed, inter alia, that "he was entitled to the full benefit of a criminal trial, including the right to have the proceeding heard by a judge other than the one before whom the contumacious conduct occurred, as provided in General Statutes § 51-33a." *Moore* v. *State*, supra, 258.

Our Supreme Court rejected the claim that the plaintiff in error was entitled to all of the procedural safeguards associated with a criminal trial. "While it is true that a proceeding for the punishment of criminal contempt should conform as nearly as possible to the proceedings in criminal cases, including the presumption of innocence, proof beyond a reasonable doubt and the privilege against self-incrimination . . . this does not mean that all criminal contempt proceedings are the functional equivalent of criminal prosecutions. *Some criminal contempts may be dealt with summarily without offending the guarantees of due process of law*." (Citations omitted; emphasis added.) Id., 258–59.

The plaintiff in error in *Wilson* v. *Cohen*, 222 Conn. 591, 594, 610 A.2d 1177 (1992), having been called to testify as a state's witness at a probable cause hearing, refused to answer certain questions asked of him. The trial court, which had ordered the plaintiff in error to answer the questions, summarily found him in contempt and imposed a six month term of imprisonment. Id., 595. On appeal, the plaintiff in error claimed that the court lacked the authority to impose summarily a six month sentence for a criminal contempt charge because it had not provided him the right to a jury trial. Id. The plaintiff in error based his claim on General Statutes § 54-82b (a), which provides in relevant part: "The party accused in a criminal action in the Superior Court may

demand a trial by jury of issues which are triable of right by a jury. . . ."

The plaintiff in error argued that the Supreme Court "should construe a summary criminal contempt proceeding as a 'criminal action' within the meaning of § 54-82b." *Wilson* v. *Cohen*, supra, 222 Conn. 597. The plaintiff in error, relying on *Bloom* v. *Illinois*, 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), argued that summary contempt proceedings and criminal prosecutions are analogous. *Wilson* v. *Cohen*, supra, 222 Conn. 598. In *Bloom*, the United States Supreme Court stated: "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom* v. *Illinois*, supra, 201. The court further stated: "Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates." Id.

In *Wilson*, our Supreme Court rejected the claim by the plaintiff in error that his summary contempt adjudication fell under the ambit of § 54-82b and that he was entitled to a jury trial. *Wilson* v. *Cohen*, supra, 222 Conn. 600. In so doing, the court adhered to its prior decisions that both distinguished criminal prosecutions from summary contempt proceedings and established that summary contempt proceedings "are criminal in nature but do not constitute a criminal prosecution." (Internal quotation marks omitted.) Id. The court also distinguished *Bloom*, noting that *Bloom* had "created a constitutional right to a jury trial for criminal contempt where the punishment imposed exceeds six months imprisonment" and that "the common law principle still applies

to contempts that qualify as 'petty offenses,' a category consisting of crimes carrying a sentence of six months or less." Id.; see also *Jackson* v. *Bailey*, supra, 221 Conn. 505–506. General Statutes § 51-33, which regulates punishment for summary contempt convictions, provides in relevant part that "no court . . . may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both."

The plaintiff in error in the present case also relies on *Bloom* and argues that we should not draw a distinction between summary criminal contempt and ordinary criminal convictions. We are bound by a long line of decisions of our Supreme Court that unambiguously have rejected similar arguments and have distinguished summary contempt proceedings from criminal prosecutions.[7] There is no right to counsel in summary contempt proceedings because such proceedings are not criminal prosecutions. Further, to recognize the right that the plaintiff in error asserts here would have the effect of impeding the court's inherent authority to impose "immediate summary punishment"; *In re Dodson,* supra, 214 Conn. 366; where warranted.

## II

The plaintiff in error next claims that the court abused its discretion in imposing the punishment that it did, namely, six months imprisonment. We disagree.

The plaintiff in error raises several arguments that appear to challenge whether his conduct legally was susceptible of contempt. The plaintiff in error posits that "it could make a difference as to who [he] directed the 'fuck you' comment to, and why." He claims that the court, in its remarks at the time of the incident,

---

[7] In addition to the decisions previously discussed, see also *Middlebrook* v. *State*, 43 Conn. 257, 267 (1876) (noting that proceedings to punish criminal contempts committed in presence of court are not "criminal" proceedings and do not bar criminal prosecutions).

appeared to base its judgment on a finding that he had directed his profanity at court personnel in general and that such conduct interfered with the administration of justice. The plaintiff in error points out that the court specifically chastised him for using profanity in the presence of "court personnel" and that such profanity was demoralizing "to them." The plaintiff in error argues that he "attempted to rectify" the situation by directing an apology to court personnel.

The plaintiff in error contrasts the court's statements at the time of the incident with the court's supplemental memorandum of decision in which, the plaintiff in error argues, the court appears to take issue with the fact that he did not apologize directly to the court for his use of profanity. The plaintiff in error argues that the court's findings "[leave] the implication that [he] was given the maximum six month sentence, instead of a lesser sentence, because he had not apologized to the trial court itself." It appears that the basis for the claim by the plaintiff in error is that he was unjustly "faulted for not apologizing to the court itself . . . ."

We have little difficulty in concluding that the conduct by the plaintiff in error was legally susceptible of contempt. As an appellate tribunal, "it is not our function either to second guess the considered judgment of the trial court or to ignore the record before us." *Banks* v. *Thomas*, supra, 241 Conn. 590. The court reasonably could have concluded that the use of profanity in open court constituted a contempt because the use of profanity disrupted court proceedings, reflected a disobedience to the court's order to be silent and imposed an indignity on the authority of the court. Having asked the plaintiff in error to explain his conduct, it was within the court's authority to reject the apology as insincere, to whomever it was directed, and to vindicate its authority by imposing the sentence that it did.

The second aspect of the claim appears to be directed at the harshness of the sentence imposed. The plaintiff in error argues that "this case is not in the realm of 'egregious' contempts deserving the maximum imprisonment the law allows." He asks this court to modify the sentence or to remand the case with direction to the trial court to reconsider the sentence.

The problem with that claim is that the plaintiff in error seeks review of his sentence under an abuse of discretion standard of review. We will uphold a summary contempt conviction as long as the court that imposed the sentence possessed jurisdiction to do so. As we have mentioned, one of the questions that is part of a jurisdictional analysis is whether the punishment imposed was authorized by law. See *State* v. *Thomas*, 241 Conn. 589. Here, there is no dispute that § 51-33 authorized the court to impose the sentence that it did.

The judgment is affirmed.

In this opinion the other judges concurred.