CORNELIUS HARGROVE *v.* SUPERIOR COURT OF
THE JUDICIAL DISTRICT OF
TOLLAND AT ROCKVILLE
(AC 28776)

Bishop, Robinson and Mihalakos, Js.

Argued September 22—officially released December 2, 2008

*Justine F. Miller*, special public defender, for the plaintiff in error.

*Denise B. Smoker,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Frederick W. Fawcett,* supervisory assistant state's attorney, for the defendant in error.

*Opinion*

ROBINSON, J. The plaintiff in error, Cornelius Hargrove, brought a writ of error contesting the Superior Court judgment summarily finding that he had committed criminal contempt during his habeas trial and sentencing him to six months imprisonment.[1] The plaintiff

---

[1] The writ originally was brought to our Supreme Court and subsequently was transferred to this court pursuant to Practice Book § 65-1.

in error claims that (1) the habeas judge should have disqualified herself from sitting in judgment on the criminal contempt and (2) the habeas court violated his constitutional and statutory rights by summarily finding him in contempt, in absentia, without affording him the opportunity to respond to the charge. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this court's review. In 1991, the plaintiff in error was arrested and charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a pistol without a permit in violation of General Statutes § 29-35. As a result of this conviction, he was sentenced to a total effective term of twenty-five years in prison. That conviction was affirmed by this court in *State* v. *Hargrove*, 33 Conn. App. 942, 638 A.2d 1098 (1994).

On July 20, 2004, the plaintiff in error filed a second petition for a writ of habeas corpus.[2] The court appointed attorney Justine F. Miller to represent the plaintiff in error, and, on his behalf, she filed a second amended petition alleging six counts.[3] At the outset of the habeas trial, which commenced on December 11, 2006, the court dismissed counts one through five on the ground that those counts were litigated previously in the plaintiff in error's first habeas petition. During the presentation of his case, the plaintiff in error became

[2] The first petition for a writ of habeas corpus alleged ineffective assistance of counsel and actual innocence. The petition was dismissed, and the subsequent petition for certification to appeal was denied. Thereafter, this court dismissed the plaintiff in error's appeal in *Hargrove* v. *Commissioner of Correction*, 92 Conn. App. 322, 884 A.2d 1031 (2005), and certification to appeal was subsequently denied by our Supreme Court in *Hargrove* v. *Commissioner of Correction*, 277 Conn. 905, 894 A.2d 987 (2006).

[3] The second amended petition alleged ineffective assistance of trial counsel, ineffective assistance of trial appellate counsel, ineffective assistance of habeas trial counsel, ineffective assistance of habeas appellate counsel, actual innocence and prosecutorial impropriety.

increasingly frustrated with his attorney and the manner in which she was representing him. During the morning session, the plaintiff in error asked to address the court, and his request was granted. At that time, he attempted to reargue the court's prior decision to dismiss counts one through five. He also complained that his attorney was not asking the proper questions. Shortly thereafter, the plaintiff in error interrupted the court proceedings to request a luncheon recess.

When the trial resumed after the recess, the plaintiff in error's mounting frustration with the court proceeding culminated in his request to the court to proceed pro se. The court fully canvassed the plaintiff in error on the implications of pro se representation. In response to the court's inquiry as to whether he fully understood these implications, the plaintiff in error stated: "I heard you the first time." Thereafter, the court granted the plaintiff in error's request for a short recess to organize his file.

When the court reconvened, the plaintiff in error resumed questioning of the witness on the stand, his prior counsel, Dante Gallucci. The counsel for the respondent, the commissioner of correction, objected to his line of questioning, and the court sustained the objection. The plaintiff in error and the court then engaged in an escalating colloquy regarding the court's decision to sustain the objection. This colloquy concluded with an outburst of profanity directed at the court by the plaintiff in error as he exited the courtroom.[4]

---

[4] The following exchange occurred between the plaintiff in error and the court:

"The Court: Mr. Hargrove, I told you that when you represent yourself, you're bound by the rules of evidence. You ask a question.

"[The Plaintiff in Error]: What are the rules of evidence? I need the rules of evidence.

"The Court: You ask a question. If there's an objection, I rule on it.

"[The Plaintiff in Error]: Bitch.

"The Court: Mr. Hargrove, if I hear you use another epithet like that, I will hold you in contempt.

Following this outburst, the court stated the following for the record: "The court, in the [plaintiff in error's] absence, based upon his ill-mannered behavior in court, which not only interrupted the court and the orderly process of this trial, but was repeatedly an insult to the dignity and the authority of the court, which was observed by not only court staff but a witness on the stand, counsel for both sides, both [the plaintiff in error] and the respondent and a member of the public seated in the back of the room, the court accordingly finds the . . . [plaintiff in error] . . . in contempt . . . ." The court then sentenced the plaintiff in error to six months imprisonment. Subsequently, on March 19, 2007, the plaintiff in error brought the present writ of error challenging the contempt ruling. Additional facts will be set forth as necessary.

As a preliminary matter, we note that a writ of error is the sole method of review for a summary criminal contempt proceeding. *Jackson* v. *Bailey,* 221 Conn. 498, 500, 605 A.2d 1350, cert. denied, 506 U.S. 875, 113 S. Ct. 216, 121 L. Ed. 2d 155 (1992). "The scope of our review reaches only those matters appearing as of record." (Internal quotation marks omitted.) Id. "[I]n a review of summary criminal contempt, the inquiry is limited to a determination of the jurisdiction of the court below. . . . Subsumed in this inquiry are three questions, namely, (1) whether the designated conduct is legally susceptible of constituting contempt . . . (2) whether the punishment imposed was authorized by law . . . and (3) whether the judicial authority was qualified to conduct the hearing." (Internal quotation

---

"[The Plaintiff in Error]: Bitch, kiss my fucking ass. How about that? Kiss my fucking ass, you stinking bitch. Now, how about that?

"Unidentified Speaker: Take him out.

"[The Plaintiff in Error]: You fucking bitch, kiss my whole ass and like it. You fucking, stinking whore, and suck my whole dick and everything, you stinking whore. Suck my fucking dick, fucking bitch.

"The Court: [The] [c]ourt holds you in contempt."

marks omitted.) *Higgins* v. *Liston*, 88 Conn. App. 599, 606, 870 A.2d 1137, cert. denied, 276 Conn. 911, 886 A.2d 425 (2005), cert. denied, 546 U.S. 1220, 126 S. Ct. 1444, 164 L. Ed. 2d 143 (2006).

I

The plaintiff in error first claims that the trial judge, *Swords, J.*, should have disqualified herself from sitting in judgment on the criminal contempt. Specifically, the plaintiff in error maintains that his tirade constituted a direct attack on the judge as an individual, rather than on the court as an abstract entity; therefore, the judge was personally embroiled so as to, in the very least, implicate the appearance of bias in her judgment on the criminal contempt. We disagree.

"[In] *Mayberry* v. *Pennsylvania*, [400 U.S. 455, 465–66, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971)], [the United States Supreme Court] held . . . that the fair administration of justice disqualifies a judge from sitting in judgment on a contempt charge if he has become so personally embroiled with a contemnor that it is unlikely for him to maintain that calm detachment necessary for fair adjudication. . . . In general, in order to determine whether a judge was required to recuse him or herself due to personal embroilment, we must appraise both the conduct of the contemnor and the reaction of the judge. While personal embroilment is a more likely reaction when the contemnor has mounted a personal attack on the judge, it may also be found in the character of the judge's response, if the judge has become visibly involved in a running controversy with the contemnor. [T]he inquiry must be . . . whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused. . . . Consequently, judicial recusal is necessary only in the unusual case where the

apparent effect of the contemnor's conduct on the judge against whom the contemptuous conduct was levied is such as to indicate that the judge's impartiality or objectivity reasonably may be called into question." (Citations omitted; internal quotation marks omitted.) *Banks* v. *Thomas*, 241 Conn. 569, 599–600, 698 A.2d 268 (1997); see also *Naunchek* v. *Naunchek*, 191 Conn. 110, 116–18, 463 A.2d 603 (1983).

Our review of the record regarding the dialogue leading to the contempt finding persuades us that the trial judge was not personally embroiled in a running controversy with the plaintiff in error and, therefore, disqualification was not required. Although the plaintiff in error attempts to classify his outburst as a "verbal sexual assault" consisting of derogatory terms specifically referencing the judge's gender, the record does not support the argument that this self-proclaimed assault in any way personally embroiled the judge. As defined, "embroil" means "*to involve* in argument, contention, or hostile action." (Emphasis added.) American Heritage Dictionary of the English Language (4th Ed. 2006). Looking at the character of the trial judge's responses to the plaintiff in error's outburst, however, it is apparent that Judge Swords maintained her professional demeanor at all times and did not depart from her role as the judicial authority even when she was the target of the profane outburst. Although the plaintiff in error was engaged in hostile, contumacious behavior, the judge did not become personally involved at any point. Rather, in response to the initial singular epithet, the judge informed the plaintiff in error that "if I hear you use another epithet like that, I will hold you in contempt." When the plaintiff in error responded with a longer outburst, the judge followed through with her prior comment by succinctly stating: "[The] [c]ourt holds you in contempt." The record does not reveal any indication that the judge became involved in a running

controversy; accordingly, recusal was not necessary to safeguard the plaintiff in error's due process rights.

Rather than citing to portions of the record to substantiate his claim of personal embroilment, the plaintiff in error asserts that the present case presents circumstances in "stark contrast" to case law upholding the summary contempt powers of a trial judge. Specifically, the plaintiff in error attempts to distinguish his case from two Supreme Court cases, namely, *Jackson* v. *Bailey*, supra, 221 Conn. 517, in which the trial judge was found to be "taking appropriate measures to maintain order in his courtroom"; id.; and *Naunchek* v. *Naunchek*, supra, 191 Conn. 119, in which the trial judge "exercise[d] considerable control and reasonable restraint in [its] response to the plaintiff's [conduct]." Id. The plaintiff in error's argument in support of this purported distinction is that his outburst constituted a personal attack on the judge as an individual. Our Supreme Court, however, has addressed this issue and determined that a personal attack on the judge does not automatically require recusal. "The use of [the summary contempt] power cannot be constrained by the [plaintiff] simply through the expediency of directing personal insults at the judge: the judge may exercise the contempt power regardless of whether he or she is the subject of attack [absent evidence of personal embroilment by the judge]. . . . It should be emphasized that . . . an unruly [plaintiff] achieves nothing by directing insults at the trial judge. The trial judge at all times retains his power of contempt . . . ." (Internal quotation marks omitted.) *Jackson* v. *Bailey*, supra, 517. Thus, although the plaintiff in error argues that the personal nature of his comments created the automatic appearance of bias, we disagree.

## II

The plaintiff in error next claims that the court improperly failed to afford him the opportunity to be heard before the summary criminal contempt finding

was made. Specifically, the plaintiff in error argues that he did not waive his right to show cause or to be present during his contempt sentencing, and, therefore, his due process rights were violated when the court sentenced him in absentia.

In its supplemental memorandum of decision, the court made the following finding regarding the course of events leading to the contempt sentencing. "As soon as the [plaintiff in error] began to swear at the court, he stood up and walked toward the lockup door approximately twenty feet away from counsel table. The marshal seated behind [the plaintiff in error] followed as [the plaintiff in error] made his way to the lockup door. As [the plaintiff in error] and the first marshal approached the marshal's desk located near the lockup door, the second marshal also stood up and walked toward the lockup door. Upon reaching the lockup, the second marshal unlocked the door and the [plaintiff in error] walked through. At no time did either of the two marshals touch [the plaintiff in error] or direct him toward the lockup or through the lockup door. At all times [the plaintiff in error] moved of his own volition and under his own power from his seat at the counsel table to the lockup door." The court also found: "[The plaintiff in error's] tirade . . . lasted continuously from the time [the plaintiff in error] stood up behind the counsel table until the lockup door was closed behind him. [The plaintiff in error's] tone of voice throughout was loud, hostile and angry. While [the plaintiff in error] was still present at the entrance to the lockup, this court held him in contempt of court. [The plaintiff in error] then walked into the lockup and the door was closed behind him. Once [the plaintiff in error] was out of the courtroom, the court put certain findings on the record and sentenced [the plaintiff in error] to six months consecutive to any other sentence previously imposed." On the basis of those observations, the court held that the plaintiff in error "by his

conduct waived his right to be present at the sentencing."

The crux of the plaintiff in error's argument on appeal is that he did not waive his right to be present during sentencing or to speak on his behalf for allocution because he did not leave the courtroom of his volition. In making this argument, the plaintiff in error is essentially contesting the court's finding of fact as set forth in the supplemental memorandum of decision. We note, however, that "[a] writ of error may not assign as error, nor may we review on a writ of error, allegations concerning the conduct of the trial court that contradict the record . . . or findings of fact as distinguished from conclusions of law." (Internal quotation marks omitted.) *McClain* v. *Robinson*, 189 Conn. 663, 668, 457 A.2d 1072 (1983). Therefore, to the extent that the plaintiff in error is contesting the factual findings of the court and maintaining that he did not voluntarily leave the courtroom, this argument does not fall within the ambit of our limited review of a writ of error. See *Higgins* v. *Liston*, supra, 88 Conn. App. 606 (stating that review of writ of error limited to determination of jurisdiction of court). Accordingly, we decline to review this claim.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The plaintiff in error does not contest whether waiver of his right to be present can be inferred from his conduct; rather, he contests whether the conduct relied on by the court to infer his waiver actually occurred. Although the plaintiff in error's claim contesting the factual findings of the court is not properly raised by a writ of error, we do note in the interest of clarity that a defendant can waive even fundamental constitutional rights through his conduct. See *State* v. *Drakeford*, 202 Conn. 75, 79, 519 A.2d 1194 (1987) ("[w]e have long held that the right to be present at a criminal trial may be lost by consent, waiver or misconduct"). Such waiver need not be express and "may be implied from the totality of acts or conduct of a defendant." Id. Specifically regarding the right to be present, our Supreme Court has held that "[a criminal] defendant may waive [the] right . . . in a number of ways, such as by his voluntary and deliberate absence from trial [or] by disruptive conduct which requires his removal from the courtroom . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 636–37, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164,

---

169 L. Ed. 2d 112 (2007); see also *State* v. *Jarzbek,* 204 Conn. 683, 687–98, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). Furthermore, in the particular context of summary criminal contempt proceedings, it is important to recognize that although the proceedings are criminal in nature, they do not constitute criminal prosecutions. *Higgins* v. *Liston,* supra, 88 Conn. App. 610. "They are for an offense against the court as an organ of public justice and not for a violation of the criminal law." (Internal quotation marks omitted.) Id. Accordingly, these proceedings are subject to fewer procedural safeguards than criminal prosecutions. Id., 611.